**In re Marlene M. FINN, Debtor.**

**Daniel F. GOSCH, Trustee of the
Estate of Marlene M. Finn,
Plaintiff–Appellee,**

v.

**Donald M. BURNS,
Defendant–Appellant.**

No. 89–1827.

United States Court of Appeals,
Sixth Circuit.

Submitted March 9, 1990.

Decided July 31, 1990.

904

Daniel F. Gosch, Detroit, Mich., pro se.

Paul E. Slavin, Dolores M. Galea, UAW–FORD Legal Services Plan, Taylor, Mich., for defendant-appellant.

Before MARTIN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

BOGGS, Circuit Judge.

Donald M. Burns appeals the district court's order avoiding as preferential transfers monthly payments made by debtor Marlene M. Finn on a loan from her credit union. 111 B.R. 123. The district court's order affirmed the judgment of the bankruptcy court. Burns claims that the trustee, Daniel F. Gosch, did not prove the necessary requirements for avoiding a transfer under § 547(b) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Burns also claims that he established an exception to the avoidance rules under § 547(c)(2). We remand the case to the bankruptcy court for a factual analysis of whether Finn incurred her debt in the ordinary course of her financial affairs.

I

On October 1, 1985, the debtor, Finn, entered a revolving loan agreement with the Taylor Community Credit Union. On February 14, 1986, pursuant to the terms of the agreement, Finn obtained an unsecured loan in the amount of $3500. The proceeds were paid to discharge consumer

debt that Finn had incurred to various retailers. Burns cosigned and guaranteed the loan. Burns is Finn's brother and hence an insider, under 11 U.S.C. § 101(30)(A)(i).

Nearly a year later, in December 1986, Finn was laid off from her job at the General Motors Fort Street Cadillac plant. On February 4, 1987, Finn filed for relief under Chapter 7 of the Bankruptcy Code. Beginning March 21, 1986, and continuing until she filed her bankruptcy petition, Finn made regular monthly payments of $115.50 to the Taylor Community Credit Union.[1] The effect of Finn's payments was to reduce Burns's contingent liability.

Since under 11 U.S.C. § 547(b) the trustee may avoid certain transfers of property of the debtor for the benefit of a creditor,[2] Gosch commenced an action to declare $1300 of the loan payment amounts to be an avoidable preference and to force Burns to pay $1300 into the bankrupt estate.[3] On cross-motions for summary judgment, the bankruptcy court held that the transfer was a preference and that Burns had failed to prove any affirmative defense. The court stated:

> [n]either Finn in particular, nor consumer debtors in general, incur long-term installment debt in the ordinary course of their financial affairs, as required by subsection (A).

## II

Burns first argues that Gosch has not proven all of the elements of an avoidable transfer under 11 U.S.C. § 547(b). Burns claims that he is not a creditor of the debtor, and therefore not an insider under

1. Finn also made at least three loan payments— on February 20, 1987, March 16, 1987, and April 16, 1987—after she filed her petition.

2. Burns, as guarantor of Finn's loan, is a "creditor" by virtue of his right to reimbursement from Finn. 11 U.S.C. § 101(9)(A); 4 Collier on Bankruptcy § 547.04 (1987).

3. The original complaint by the trustee stated that, prior to the filing, the debtor had transferred to the Taylor Community Credit Union "the sum of Thirteen Hundred Eighty Dollars ($1380.00)." Thirteen hundred eighty dollars is apparently the product of twelve payments at $115 per payment. In fact, each payment was $115.50, making the sum of twelve payments

§ 547(b)(4)(B). He also claims that a post-petition reaffirmation agreement between Finn and the Taylor Community Credit Union prevented the credit union (and, hence, Burns himself) from "receiv[ing] more than [it] would receive" under the conditions of § 547(b)(5).

These arguments raised by Burns are questions of fact. Our review of the bankruptcy court's findings of fact is extremely limited; such findings can be set aside only if "clearly erroneous." *See, e.g., In re K.C. Machine & Tool Co.,* 816 F.2d 238, 244 (6th Cir.1987). The bankruptcy court found that the parties had stipulated to the facts that Burns is an insider and a creditor. Burns does not dispute the stipulation.

The only other factual issue raised by Burns is whether he received "more as a result of Finn's payments to the credit union than he would have received in a Chapter 7 liquidation if Finn had not made the payments." Disregarding the post-petition affirmation agreement as irrelevant, and analyzing Gosch's § 547(b)(5) claim at the moment of bankruptcy, the bankruptcy court found that Burns did receive a benefit that operated to the detriment of other unsecured creditors. We discern no clear error in the bankruptcy court's findings, and we agree that Gosch established all of the elements necessary to avoid this transfer under 11 U.S.C. § 547(b).

## III

### A

Burns's second argument is that, even if Finn's payments were otherwise avoidable

$1386. However, Finn did not make twelve payments before filing bankruptcy. The loan was taken out on February 14, 1986, but the first monthly payment was not due until March. Since she filed on February 4, 1987, and her twelfth monthly payment (which she did make) was not due until mid-February, she only actually made eleven payments before filing bankruptcy.

However, the bankruptcy court's amended memorandum opinion of June 30, 1988 states that the parties have stipulated to the fact of twelve payments and that the payments total $1300.

**906**

transfers under § 547(b), they should be excepted from the preference rules by § 547(c)(2).[4] Burns disputes the bankruptcy court's determination that he had not proven that Finn's payments met the requirement of § 547(c)(2)(A). The court held that, although Finn had *made* her *payments* in the ordinary course of her financial affairs, she had not *incurred* the underlying *debt* in the ordinary course of her financial affairs. The bankruptcy court and the district court held that Finn's loan was not a "debt incurred in the ordinary course of business or financial affairs of the debtor" because long-term consumer loans are never incurred in the ordinary course of a consumer's financial affairs. Burns claims that this conclusion is contrary to the current state of the law.[5]

Prior to 1984, Burns's claim for an exception would clearly have been barred by 11 U.S.C. § 547(c)(2)(B) (1978), which allowed an exception only for a transfer "made not later than 45 days after" the day the underlying debt was incurred. Burns does not cite any case in which a court has held that long-term consumer debt was incurred in the ordinary course of financial affairs.[6] In a number of cases prior to the 1984 amendments, bankruptcy courts interpreted the same language, "incurred in the ordinary course of business or financial affairs of the debtor," as including ordinary consumer credit. In none of these cases was the matter challenged, as attention generally focused on whether the particular payments were made within forty-five days of the incurrence of the debt, a

requirement that was deleted in the 1984 amendments. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, Title III, § 462(c), 98 Stat. 355, 378 (1984); *In re Keeling,* 11 B.R. 361 (Bankr.D.Minn.1981); *In re Hersman,* 20 B.R. 569 (Bankr.N.D.Ohio 1982); *In re Sanborn,* 29 B.R. 655 (Bankr.D.Me. 1983).

The effect of that deletion has been a matter of some scholarly interest, as the remaining language itself sheds no light on the deletion. Furthermore, the legislative history has been accurately described as "sparse." *In re Control Electric, Inc.,* 91 B.R. 1010, 1013 n. 3 (Bankr.N.D.Ga.1988). Under these circumstances, we believe that the abolition of this restriction, with no other restriction put in its place, simply means that the length of time between incurring the debt and making the challenged payments has no independent overriding significance. Long-term debt is as amenable to the exception of § 547(c)(2) as is any other type of debt, so long as the facts of the situation bring it within the "ordinary course of business or financial affairs" language.

The legislative history does state that "[t]he purpose of this exception is to leave undisturbed normal financial relations." H.R.Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S. CODE CONG. & AD. NEWS 5787, 6329. This language focuses on the "normalcy" of the relations, and is buttressed by the next phrase of the re-

**4.** 11 U.S.C. § 547(c)(2) states:
The trustee may not avoid under this section a transfer—
＊ ＊ ＊ ＊ ＊ ＊
(2) to the extent that such transfer was—
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms;
＊ ＊ ＊ ＊ ＊ ＊

**5.** It is not challenged that the loan was in the ordinary course of business for the credit union, and made according to ordinary business terms.

**6.** Burns refers us to *In re Butler,* 85 B.R. 34, 36 (Bankr.D.Md.1988), where the court did hold that a "long-term loan by a consumer debtor is unquestionably within 'the ordinary course' of that debtor's 'financial affairs.'" That case, however, was a § 547(c)(2)(B) case in which the issue for resolution was whether the loan *payments* were made in the ordinary course, not a § 547(c)(2)(A) case in which the issue was whether the underlying *debt* was incurred in the ordinary course.

port, stating that the exception "does not detract from the general policy of the preference section to discourage *unusual* action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Ibid.* (emphasis added).

■ Thus, the incurring of long-term consumer debt that is a "normal financial relation" and that is not "unusual action" undertaken during the "slide into bankruptcy" will satisfy § 547(c)(2)(A)'s requirement for an exception from the avoidance rules.

The leading case in this circuit construing § 547(c)(2), as amended, is *In re Fulghum Construction Corp.*, 872 F.2d 739 (6th Cir.1989). In *In re Fulghum*, we held that a court considering an exception to the preference provisions under § 547(c)(2) must engage in a " 'peculiarly factual' analysis" of "the business practices which were unique to the particular parties under consideration." *Id.* at 743. A transaction can be "ordinary" for purposes of § 547(c)(2) if "consistent with the course of dealings between the particular parties." *Ibid.* This is true even where, as in *In re Fulghum*, "the debtor's business transactions were irregular" within its industry. *Ibid.* The *Fulghum* court held it was controlling that advances by the creditor and repayments by the debtor had been recurring (as demonstrated by over 100 such transactions in the fourteen months preceding the filing of the bankruptcy petition). *Id.* at 744.

A detailed factual analysis of the transaction between Finn and the Taylor Community Credit Union could suggest that Finn incurred her debt outside the ordinary course of her financial affairs. However, the courts below did not perform such an analysis of the transaction between Finn and the Taylor Community Credit Union. Instead, they relied on the flat rule that a long-term consumer credit transaction could not be within the normal course of a debtor's financial affairs.

The bankruptcy court's opinion states that:

[n]either Finn in particular, nor consumer debtors in general, incur long-term installment debt in the ordinary course of their financial affairs, as required by subsection (A).

The district court relied on *In re Control Electric, Inc.*, 91 B.R. at 1016, to conclude similarly that "the long-term installment debt at issue here was not incurred in the ordinary course ... and [the court] concurs with the bankruptcy court's conclusion that consumer-debtors, like the debtor here, do not in general incur long-term installment debt in the ordinary course of their financial affairs."

The court noted the contrary case of *In re Butler*, 85 B.R. 34 (Bankr.D.Md.1988), but declined to follow it, thus emphasizing additionally that the ruling below is one of law, not of a peculiarly factual inquiry by either the bankruptcy court or the district court.

## B

Some commentators viewed the rationale of the pre–1984 provision, allowing payments that were made within 45 days of the incurring of the debt to be considered normal, as implying that such debt was essentially short-term trade credit, analogous to a true "contemporaneous exchange" in § 547(c)(1). Those commentators argue that the deletion of the 45–day limit did not eliminate the (unwritten) limitation of such dealings to the nearly contemporaneous cycle of trade debt. In their view the amendment only allowed delays in payment of some amount beyond 45 days where such payment still fit within the trade cycle situation. *See, e.g.,* Broome, *Payments on Long-term Debt as Voidable Preferences: the Impact of the 1984 Bankruptcy Amendments*, 1987 Duke L.J. 78, 122 (1987). *Cf.* Herbert, *The Trustee Versus the Trade Creditor II: the 1984 Amendments to Section 547(c)(2) of the Bankruptcy Code*, 2 Bankr.Dev.J. 201 (1985); Weintraub and Resnick, *Preferential Payment of Long-term Debts in the Ordinary Course of Business—the Effect of the 1984 Amendments*, 17 U.C.C.L.J. 263 (1985).

The problem with this analysis is that it imports too much assumed history into the

barren language of the statute. On its face, the pre–1984 language applied to all debt incurred "in the ordinary course," and the limitation came from requiring the payment within 45 days of the debt. By eliminating the 45–day limitation, and neither stating nor implying any other limitation, Congress's language left the field open to long-term consumer debt for exception under § 547(c)(2). Some courts take the position, as *In re Control Electric*, that without legislative history to back it up, a change in the language of the statute is not to be respected. Particularly interesting is the following language:

it would appear that elimination of the 45–day limitation brought long-term loans within the scope of the exception.... [W]hile facially appealing, [this conclusion] belies an incomplete analysis. No legislative history ... exists which clearly allows such a facile conclusion.

91 B.R. at 1013.

We reject this method of statutory interpretation. The position of the *In re Control Electric* court—that transfers made pursuant to long-term debt cannot be excepted from the avoidance provisions of § 547(b)—cannot be derived from the statutory language or legislative history, and it is factually inconsistent with American credit practices today. The type of loan taken out by Finn in this case is, indeed, the life blood of credit unions such as hers and of commercial credit companies, and is an important part of the business of banks. Such a transaction can scarcely be "unusual" for *every* borrower.

C

■ A more difficult question is whether a particular loan can be incurred "in the ordinary course of financial affairs" if the borrower has not taken out a number of such loans, or a number of such loans from the same institution. Obviously, it is easier to find "ordinary course" if a transaction is indeed one of the "recurring, customary credit transactions" with regard to the particular borrower, as was the case in *In re Fulghum*. However, in that case the emphasis was on whether a practice that was definitely *not* ordinary in the borrower's industry could nevertheless be in the ordinary course of business between two particular businesses.

Here, we have the opposite situation. Obviously every borrower who does something in the ordinary course of her affairs must, at some point, have done it for the first time. We hold that, as a general rule, subject to the individual fact-finding powers of the district court in a specific inquiry, a transaction can be in the ordinary course of financial affairs even if it is the first such transaction undertaken by the customer. This rule holds where the transaction would not be out of the ordinary for a person in the borrower's position.

In our case, incurring the loan did not increase the borrower's total indebtedness, nor was the loan grossly disproportionate to the borrower's apparent earning power at the time. In fact, the borrower did make regular payments for over a year, ending them only some months after she had lost her job. The loan appears to have been a "debt consolidation" loan, as the record reveals that the $3500 borrowed was disbursed entirely to Amoco, J.C. Penney, and Michigan Bank Card.

We therefore remand for the bankruptcy court to conduct a factual analysis of this transaction to determine whether this transaction should be considered as having been incurred in the ordinary course of the financial affairs of a consumer in Ms. Finn's position, or in the ordinary course of her particular affairs.

The judgment of the district court is REVERSED and the case REMANDED for proceedings consistent with this opinion.