In re Charles M. WINTERS, Debtor.

Mark T. MILLER, Trustee, Plaintiff,

v.

Barbara KIBLER and Sammie Lambert, Defendants.

Bankruptcy No. 93–30122.
Adv. No. 94–3012.

United States Bankruptcy Court,
E.D. Kentucky,
Frankfort Division.

May 19, 1995.

Mark T. Miller, Trustee, Nicholasville, KY, pro se.

Gregg Y. Neal, Shelbyville, KY, for defendants.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the Court on Cross-Motions for Summary Judgment filed herein by the trustee and the defendants. The parties having submitted briefs and an Agreed Stipulation of Facts, an Order Submitting Upon the Record was entered on April 17, 1995. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b); it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

The trustee filed his Complaint on December 22, 1994, seeking to avoid an alleged preferential transfer. The defendants filed their Answer on January 13, 1995. The trustee filed his Motion for Summary Judgment on February 24, 1995; the defendants filed theirs, along with their Response to the Trustee's Motion, on March 10, 1995. The Agreed Stipulation of Facts filed by the parties is as follows:

1. On or about January 8, 1992, the Debtor, Charles Winters, and his spouse sold certain property to third parties, David and Lola Goode, and received as partial consideration therefor a vendor's lien against the property and a promissory note in the amount of $11,725.00.

2. Prior to the filing of the bankruptcy herein by the Debtor, Charles Winters, Mr. and Mrs. Goode were notified by the Defendants herein that they had obtained a judgment against the Debtor, and said Defendants were going to enforce their judgment against the proceeds of the above referenced promissory note. In response, Mr. and Mrs. Goode paid off their promissory note by paying all sums to the Frankfort law firm of Stoll, Keenon & Park These sums were paid to said law firm, to be held in escrow, until the miscellaneous claims to the funds could be determined. The Debtor's non-exempt portion of these funds was $4,866.94.

3. On or about March 2, 1993, the defendants herein, Barbara Kibler and Sammie Lambert, obtained a judgment against the Debtor in Shelby Circuit Court, Civil Action No. 91–CI–00302, in the amount of $35,150.00 plus interests and costs. In order to try to collect on the payment of said judgment, said Defendants initially filed a Judgment Lien on or about March 28, 1994, in Franklin County, Kentucky, and thereafter (sic) procured a Non–Wage Order of Garnishment on or about April 9, 1993. The Order of Garnishment was served upon Stoll, Keenon & Park on or about April 12, 1993, in a attempt to garnish the funds then held by said law firm for and on behalf of the Debtor, as a result of the payoff from David and Lola Goode.

4. The Debtor filed the underlying Chapter 7 bankruptcy case herein (93–30122) on or about April 14, 1993. As of said date the Debtor's sworn bankruptcy petition indicates that his total liabilities substantially exceeded his assets. Additionally, the trustee's investigation of the Debtor's finances indicates that there were no material changes in the Debtor's assets or liabilities between April 12 and April 14, 1993.

5. On or about October 12, 1993, the Defendants, by and through their attorney, filed a Proof of Claim in Case No. 93–30122 in the amount $44,005.27, with said claim purporting to be a secured claim by virtue of the judgment and garnishment of the Shelby Circuit Court.

6. The Trustee currently holds non-exempt funds affected by this litigation in the amount of $4,497.22 after payment of administrative expenses.

7. The Defendants herein have previously filed an adversary proceeding against the Debtor, in order to prevent said Debtor from discharging the indebtedness owed to said Defendants. Said debt has been found to be non-dischargeable pursuant to Order of this Court dated October 18, 1993, in a separate adversary proceeding.

■ The trustee contends, and the defendants dispute, that the act of procuring a garnishment order directed to the funds held by Stoll, Keenon & Park is a transfer within the meaning of 11 U.S.C. § 547(b). This section provides that the trustee may avoid a transfer of an interest in property of the debtor made

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before the transfer was made;

(3) while the debtor was insolvent;

(4) on or within 90 days before the filing of the bankruptcy petition;

(5) that enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of title 11.

Case law generally supports the trustee's contention that the acquisition of a garnishment lien is a "transfer". In *In re Jones,* 47 B.R. 786 (Bkrtcy.E.D.Va.1985) the court stated:

... the acquisition ... of a garnishment lien ... was a 'transfer' within the meaning of the preference statute and was perfected at the time of the delivery of the writ of *fieri facias* ...

At page 789. Upheld in *In re S. Galeski Optical Co.,* 169 B.R. 360 (Bkrtcy.E.D.Va. 1994). Similarly, the court in *In re Maytag Sales and Service, Inc.,* 23 B.R. 384 (Bkrtcy. N.D.Ga.1982), held that

With respect to whether garnisheeing the debtor's bank account is considered a transfer, it is clear that an involuntary

disposition of the debtor's property is nonetheless a 'transfer' for purposes of determining a preference. Collier's ¶ 547.11. 'Transfer' is defined as 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property including a retention of title as security interest.' 11 U.S.C. § 101(4).... [A]n involuntary disposition such as '[t]he fixing of judicial liens within the preference period will be avoidable if all other elements of a preference are present.' Collier's ¶ 547.11.

At page 388. *See also In re Buzzell,* 56 B.R. 197, 198 (Bkrtcy.D.Md.1986).

■ The defendants also dispute the fact that the funds being held by Stoll, Keenon & Park were property of the debtor. They argue that since the funds were in escrow, the debtor could not have had a property interest in them. They cite *Begier v. I.R.S.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) in support of their position. That case held that trust fund taxes collected by the debtor never became property of the debtor.

However, there is no evidence in the record herein to establish that the funds in question were actually being held "in escrow." In *In re Chesapeake Associates, Ltd. Partnership,* 141 B.R. 737 (Bkrtcy.D.Kan. 1992), the court stated:

In order for funds to be held 'in escrow', there must be an escrow agreement among the parties. 'The depository must be guided in carrying out its duty by what the contract says, for the agreement for escrow with its instructions constitutes the full measure of the duties and obligations assumed by the depository.' ... The depositary is a third person to whom the principal parties to the contract have entrusted certain authority by the escrow agreement....

The record also fails to establish that there was an agreement providing that delivery of the funds was conditioned upon the performance of some act or the happening of some event. 'In order to impose a duty, beyond that of mere safekeeping, upon an escrow depository in connection with papers or instruments left in its custody the delivery and receipt of the papers and instruments left in its custody must be conditioned upon the performance of some act or the happening of some event *expressed in the agreement for escrow.'* ... (Citations omitted.)

At page 745.

While Stoll, Keenon & Park may have kept the subject funds in a so-called "escrow account", there is nothing in the record herein to suggest that the firm was performing anything but a "safekeeping" function while the defendants' claim to the funds was being resolved. Absent any evidence of an actual escrow agreement, the Court will assume that this is the case, and that the funds remained property of the debtor.

Finally, the defendants contend that 11 U.S.C. § 547(c) prevents the trustee from avoiding the transfer. They argue that because the trustee is unable to satisfy all five elements of § 547(b), he is precluded by § 547(c) from avoiding the transfer. The court has established that a transfer within the meaning of the preference statute took place, and that the property in question was the debtor's. A review of the requirements of § 547(b) reveals that the facts of this case satisfy each of the five elements.

The Agreed Stipulation of Facts sets out that the defendants are creditors of the debtor and the transfer was made for their benefit on account of an antecedent debt owed by the debtor. The transfer was made while the debtor was insolvent and within 90 days before the filing of the bankruptcy petition. Lastly, the garnishment lien made the defendants secured creditors and put them in a position to receive more than they would have in a pro rata distribution if the transfer had not been made.

The defendants do not make clear their contention that the trustee is precluded by § 547(c) from avoiding the transfer, although they appear to argue that it falls within the ordinary course of business exception. Section 547(c)(2) provides that the trustee may not avoid a transfer to the extent that it was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee,

made in the ordinary course of business or financial affairs of the debtor and the transferee, and according to business terms.

■ The defendants appear to argue that because their transaction with the debtor involved the construction and sale of a home, and this was "in the course of regular business for the Debtor," that the underlying transaction fits within the § 547(c)(2) exception. However, as stated in *In re Fulghum Const. Corp.*, 872 F.2d 739 (6th Cir.1989):

> [C]ase law is in agreement that this section was intended to 'protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee.' *In re Energy Co-op Inc.*, 832 F.2d 997, 1004 (7th Cir.1987).

At page 743. It is clear that § 547(c)(2) applies if the debtor and the transferee have an ongoing, "recurring" business relationship. It does not apply to single, isolated transactions such as the one between the debtor and the defendants herein.

The initial burden of the movant for Summary Judgment is to show that there is no basis in the record for findings of facts that might determine a result of the case in favor of the non-movant. Such a showing would satisfy the movant's burden under Federal Rule of Civil Procedure 56(c) that there are no genuine issues as to any material fact. *In re Calisoff*, 92 B.R. 346 (Bkrtcy.N.D.Ill.1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, at 251, 106 S.Ct. 2505, at 2510, 91 L.Ed.2d 202, at 214. (1986).

The Court finds that the plaintiff trustee has satisfied his burden. The defendants' Motion for Summary Judgment does not set forth specific facts showing that there is a genuine issue for trial, as required by FRCP 56, in defense of the Motion for Summary Judgment. No genuine issue as to any material fact having been presented, therefore, the trustee is entitled to judgment as a matter of law. An order in conformity with this opinion will be entered separately.