In re TULSA LITHO COMPANY, Debtor.

Neal Tomlins, Plan Trustee for the Chapter 11 Bankruptcy Estate of Tulsa Litho Company, Plaintiff–Appellant,

v.

BRW Paper Co., Inc., Defendant–Appellee.

BAP No. NO–98–058.
Bankruptcy No. 96–01814.
Adversary No. 97–00378.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Feb. 23, 1999.

Neal Tomlins (Ronald E. Goins and Ellen E. Gallagher with him on the brief), Tomlins & Goins, P.C., Tulsa, OK, for Plaintiff–Appellant.

Mark Stromberg of Shields, Britton & Fraser, P.C., Dallas, TX, for Defendant–Appellee.

Before McFEELEY, Chief Judge, CLARK, and ROBINSON, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

Neal Tomlins, Plan Trustee for the Chapter 11 Bankruptcy Estate of Tulsa Litho Company (the "Trustee"), appeals the judgment of the United States Bankruptcy Court for the Northern District of Oklahoma dismissing the Complaint to Avoid and Recover Preferential Transfer and finding that such preferential transfer fell within the ordinary course of business exception of 11 U.S.C. § 547(c)(2). We affirm.

### I. *Appellate Jurisdiction*

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The bankruptcy court's judgment disposed of the adversary proceeding on the merits and is subject to appeal under 28 U.S.C. § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). The Trustee's notice of appeal was timely under Fed.R.Bankr.P. 8002, and the parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the Northern District of Oklahoma. 28 U.S.C. § 158(c)(1); Fed.R.Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

### II. *Standard of Review*

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed.R.Bankr.P. 8013; *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir.1996). The bankruptcy court's determination that the transaction at issue fell within the ordinary course of business exception of § 547(c)(2) is a question of fact, reversible only if clearly erroneous. *See Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1020 (10th Cir. BAP 1998).

### III. *Background*

Tulsa Litho Company ("Tulsa Litho"), is a corporation engaged in the business of sheetfed printing for commercial uses. Tulsa Litho uses large quantities of paper in its business.

In April 1996, Tulsa Litho was acquired by Consolidated Graphics. Shortly thereafter, Tulsa Litho contacted BRW Paper Company

("BRW"), to purchase paper on an open credit account. Consolidated Graphics had been a customer of BRW's for quite some time, and enjoyed favorable rates. Tulsa Litho submitted a credit application to BRW using Consolidated Graphics's credit references as its own. Thereafter BRW delivered paper to Tulsa Litho on open account, based on Tulsa Litho's affiliation with Consolidated Graphics. BRW's first transactions with Tulsa Litho occurred in April 1996, as evidenced by the following invoices [1]:

| Invoice No. | Date | Amount |
|---|---|---|
| 60646 | 4/17/96 | $ 756.00 |
| 60698 | 4/18/96 | $3,770.00 |
| 60790 | 4/23/96 | $7,052.43 |
| 60969 | 4/26/96 | $7,700.70 |

Invoice numbers 60646, 60790, and 60969 had payment terms of "1% 30, net 31," meaning that Tulsa Litho would receive a 1% discount if the invoice were paid within thirty days, but full payment was nevertheless due thirty-one days after the date on the invoice. Invoice number 60698 had payment terms of "2% 20, net 21," indicating a 2% discount if paid within twenty days, or full payment due twenty-one days after the date on the invoice.

On or about May 8, 1996, Tulsa Litho issued a cashier's check to BRW in the amount of $18,893.55 in payment of the April invoices. This amount is consistent with the 2% 20–day payment term historically enjoyed by Consolidated Graphics, but is inconsistent with the terms printed on the invoices. BRW received Tulsa Litho's payment at its lockbox and posted the payment to Tulsa Litho's account on May 20, 1996.

Tulsa Litho filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on May 15, 1996. During the period from February 19, 1996 to May 8, 1996, Tulsa Litho made 473 payments to its creditors. Of those payments, nine were made by cashier's check, including the payment to BRW. Tulsa Litho unilaterally determined which of its creditors it would pay by cashier's check.

Bryan Barlow, one of BRW's principals, testified that it was customary for BRW to receive payments at its lockbox in the form of corporate checks, cashier's checks, money orders, and cash, and, although most payments received were in the form of corporate checks, it was not unusual to receive some payments in the form of cashier's checks. Mr. Barlow also testified that BRW was not aware that Tulsa Litho was experiencing financial difficulty and did not demand payment from Tulsa Litho in the form of a cashier's check or money order.

Tulsa Litho's payment of BRW's April invoice by cashier's check is the transfer at issue in this appeal. The parties do not dispute the bankruptcy court's finding that this transaction constitutes a preferential transfer under 11 U.S.C. § 547(b).[2] What is at issue on appeal is the bankruptcy court's determination that the transaction was not avoidable because it fell within the ordinary course of business exception contained in 11 U.S.C. § 547(c)(2).

## IV.  Discussion

The "ordinary course" of business exception is found at 11 U.S.C. § 547(c)(2) and provides that the trustee may not avoid a preferential transfer:

(2) to the extent that such transfer was—

---

1. BRW also delivered paper to Tulsa Litho in May 1996, but, with the exception of invoice number 61620, which was paid as an administrative claim under the terms of the confirmed plan, these invoices remain unpaid and are not the subject of this appeal.

| Invoice No. | Date | Amount |
|---|---|---|
| 61112 | 5/01/96 | $1,446.64 |
| 61299 | 5/08/96 | $ 829.27 |
| 61493 | 5/13/96 | $1,193.40 |
| 61620 | 5/15/96 | $1,920.73 |
| 61524 | 5/15/96 | $ 9.71 |
| 61983 | 5/24/96 | $ 672.00 |

2. The bankruptcy court made the following findings of fact: 1) BRW was a creditor of Tulsa Litho; 2) the Debtor transferred to BRW the sum of $18,893.55 by cashier's check on or about May 8, 1996 (the "Transfer"); 3) the Transfer was made within 90 days of the date of Debtor's Petition for Relief under Chapter 11; 4) the Debtor was insolvent at the time of the transfer; and 5) the Transfer enabled BRW to receive more than BRW would receive if the case were one under Chapter 7, the Transfer had not been made, and BRW received payment pursuant to Chapter 7 on such debt. The bankruptcy court also concluded that the Transfer was made on account of antecedent debt.

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms. . . .

■ The Tenth Circuit has held that the ordinary course of business exception contains a subjective test in subsection (B) and an objective test in subsection (C). *Sunset Sales*, 220 B.R. at 1020. The subjective test examines whether the transfers at issue were "ordinary as between the parties" and the objective test examines whether the transfers were "ordinary in the industry." *Id.* A transaction must meet both tests in order to qualify as an exception.

■ The ordinary course of business exception is an affirmative defense. *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir.1993). The creditor has the burden of establishing each of these elements by a preponderance of the evidence. *Id.* This defense is narrowly construed. *Sunset Sales*, 220 B.R. at 1020 (quoting *Jobin v. McKay (In re M & L Business Machine Co.)*, 84 F.3d 1330, 1339 (10th Cir.1996)). Findings under these subsections are usually factual, and accordingly are reviewed under the clearly erroneous standard. *Id.*

The parties do not dispute that the transaction meets the requirements of § 547(c)(2)(A). The Trustee contends that BRW failed to establish its affirmative defense that the preferential transfer was within the ordinary course of business exception because it did not prove by a preponderance of the evidence that the transfer met both the subjective test and the objective test of this exception.

3. Specifically, the timing of the payment and the amount of the cashier's check varied from the printed invoice terms.

### A. The Subjective Test

■ When applying the subjective test of subsection (B), courts compare transfers from the pre-preference period with transfers during the preference period and weigh the following four primary factors: "(1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made." *Sunset Sales*, 220 B.R. at 1020–21. When considering the first two factors, if there are no prior transactions, courts should generally look to see whether the debtor adhered to the contract payment terms. *Id.* at 1021.

■ The Trustee argues that BRW did not prove that it met the requirements of the subjective test for the following reasons:

1) BRW did not prove that the invoices were paid according to the contract payment terms;

2) BRW did not prove that payment by a cashier's check was a usual payment activity for Tulsa Litho;

3) BRW did not prove that the circumstances under which it received the cashier's check were within the ordinary course of Tulsa Litho's business or financial affairs.

The Trustee's arguments are without merit. The transaction at issue was the first between BRW and Tulsa Litho. The Trustee argues that since Tulsa Litho had no prior dealing with BRW and it did not pay the invoices according to their printed terms,[3] BRW failed the first part of the subjective test. The bankruptcy court held that BRW met this part of the test based on evidence that the "actual credit terms between the parties" were other than those printed on the invoice. (Aplts. App. at 0047 n. 7). The court reasoned that it was the dealings between the parties and not the printed terms on an invoice that established the course of dealing.[4]

4. *See Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir.1989)(finding that irregular business transactions may be considered ordinary if such transactions are within a consistent course of dealing

■ The bankruptcy court's findings are consistent with the policy behind the ordinary course of business exception, which is to leave normal business practices between the two parties undisturbed.[5] It is what is *normal* between the two parties that controls, not necessarily the printed words of an invoice.

The record supports the bankruptcy court's holding. Although Tulsa Litho did not pay BRW in accordance with the printed terms on the invoices it received from BRW, it did pay BRW in accordance with Consolidated Graphic's established payment practices. There was evidence presented from which the bankruptcy judge could find that when Tulsa Litho was acquired by Consolidated Graphics, it assumed its payment practices and that BRW dealt with Tulsa Litho like it dealt with Consolidated Graphics and all its affiliates.[6]

The third prong of the subjective test examines both the debtor and the creditor's conduct to determine their normal payment practices. The Trustee contends that because Tulsa Litho used cashier's checks to pay only 9 out of the 473 invoices during the preference period, BRW failed to establish that payment with a cashier's check was within the parties' normal business practices.

■ The bankruptcy court made factual findings that BRW did not demand payment by cashier's check and that Tulsa Litho made a unilateral decision to pay BRW with a cashier's check. In the absence of any additional factors, the bankruptcy court held that the singular fact that Tulsa Litho paid with a cashier's check was insufficient to defeat the ordinary course of business exception.[7] We agree.

This part of the subjective tests looks for "unusual payment activity." The Trustee relies heavily on the fact that only nine invoices were paid with a cashier's check. By itself, the number of invoices paid by cashier's check is not dispositive. What is significant for this prong of the subjective test is what constitutes a normal payment method for these two parties. It was not unusual for BRW to receive payment by cashier's check. In the absence of any other evidence that payment with a cashier's check was unusual, we hold that payment by cashier's check alone is not enough to defeat the ordinary course of business exception.

The circumstances under which the debtor made the preferential transfer is the focus of the fourth prong of the subjective test. The Trustee argues that because Tulsa Litho used cashier's checks to pay those creditors who had been "helpful" following its acquisition by Consolidated Graphics, the circum-

between the parties) (quoting *In re Fulghum Constr. Corp.*, 872 F.2d 739, 742 (6th Cir.1989)).

5. The policy behind the ordinary course of business exception is "to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 95–989, at 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874.

6. Brian Barlow, currently the general manager for BRW and an employee of the paper industry for fourteen years, testified that BRW extended credit to Tulsa Litho after receiving a financial application from them in which they represented themselves as a subsidiary of Consolidated Graphics. Based on that information, BRW gave Tulsa Litho the same standardized credit terms they gave Consolidated Graphics and all of its affiliates.

7. The bankruptcy court distinguished cases in which payment with a cashier's check did defeat the ordinary course of business exception by

noting that in these cases, several additional factors played an important role in the decision. *See Everlock Fastening Sys., Inc. v. Health Alliance Plan (In re Everlock Fastening Sys., Inc.)*, 171 B.R. 251 (Bankr.E.D.Mich.1994) (holding that the issuance of a cashier's check for past due insurance premiums did not meet the ordinary course of business exception when the cashier's check was issued hours before the petition was filed, it covered more items than previous practice, and the creditor and debtor had a course of dealing encompassing 144 separate payments that were not made with a cashier's check); *Flatau v. Marathon Oil Co. (In re Craig Oil Co.)*, 31 B.R. 402 (Bankr.M.D.Ga.1983) (holding that it was not within the ordinary course of debtor's business to pay with a cashier's check when the creditor requested cashier's checks, a third party had requested that the creditor join in an involuntary petition, the debtor was delinquent in its payments and over its credit limit), *aff'd*, 785 F.2d 1563 (11th Cir.1986).

stances under which the check was transferred were not within Tulsa Litho's ordinary course of business.

The issue is not whether the transfer in question is preferential; it is. The issue is whether the transfer was within the ordinary course of business exception. The bankruptcy court found that neither the circumstances surrounding BRW's behavior nor Tulsa Litho's behavior were unusual. Specifically, the bankruptcy court found it significant that BRW did not ask for the cashier's check and often received such checks for outstanding invoices. While the bankruptcy court did find that Tulsa Litho issued the cashier's check to BRW hoping that BRW would offer unsecured credit to them after it filed for bankruptcy, it also found that this behavior was not unusual. This holding is not clearly erroneous.

### B. Objective Test

The Tenth Circuit has interpreted the phrase "ordinary business terms" in the objective test of subsection (C) to mean those terms that are used in " 'normal financing relations': the kinds of terms that creditors and debtors use in ordinary circumstances when debtors are healthy." *Sunset Sales,* 220 B.R. at 1021 (quoting *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners),* 12 F.3d 1549, 1553 (10th Cir.1993)).

The Trustee asserts that BRW failed to meet this test for two reasons: 1) it did not present evidence that it was "ordinary" for creditors to sell products to a financially troubled company without obtaining its financial information; and 2) it did not show that use of a cashier's check on the eve of bankruptcy is within "ordinary business terms."

The bankruptcy court found that BRW was unaware of the financial difficulties of Tulsa Litho, that BRW extended credit to Tulsa Litho in accordance with the terms that it extended credit to Consolidated Graphics,[8] that the credit terms extended by BRW were ordinary within industry standards, and the payment made by Tulsa Litho

to BRW was within these credit terms. There was evidence before the Court to support these findings. It was not clearly erroneous for the bankruptcy court to find that this evidence satisfied the objective test.

### V. Conclusion

For the reasons set forth above, the judgment is AFFIRMED.

---

8. *See supra* note 6. Tulsa Litho provided a financial statement to BRW citing Consolidated Graphic's credit references.