**In re RUSSELL CAVE COMPANY, INC. f/k/a The J. Peterman Company, Debtor.**

**The Official Committee of Unsecured Creditors, Plaintiff,**

v.

**Charleston Forge, Inc. f/k/a Village Trading, LLC, Defendant.**

**Bankruptcy No. 99–50142. Adversary No. 00–5118.**

United States Bankruptcy Court, E.D. Kentucky, Lexington Division.

March 27, 2001.

Paige L. Bendel, Cincinnati, OH, for plaintiff.

Brian M. Johnson, Lexington, KY, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM S. HOWARD, Chief Judge.

This matter came before the Court for trial on February 22, 2001. The Court

having considered the testimony offered at trial, the Joint Stipulations of the parties, the briefs of the parties, and the documentary and other pertinent evidence of record in this case, and being otherwise fully advised, now in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7052 of the Federal Rules of Bankruptcy Procedure, makes the following Findings of Fact and Conclusions of Law.

### 1. *Findings of Fact*

Prior to trial the parties entered into Joint Stipulations concerning the testimony of the various witnesses. Those Joint Stipulations and the testimony at trial lead the court to the following findings of fact.

The debtor in this liquidating Chapter 11 case was an upscale retailer of clothing and household items which originally began as a mail order operation in 1987. It filed its Chapter 11 petition in this Court on January 25, 1999. The defendant herein is engaged in the sale of casegoods and other items for resale by retailers such as the debtor. During the 90 day period immediately preceding the filing, the debtor made payments to the defendant for goods received totaling $50,043.60.

The relationship between the debtor and the defendant arose when the debtor placed three separate orders for various casegoods and filler items on July 10, 1998. This date appears on each of three invoices as the order date. This was the first time the parties had done business with each other. The goods were not shipped to the debtor until September 10, 1998, however. The payment term set out on the invoices was twenty days. The total sales price for all the goods was $50,043.60, as set out above. The debtor paid the entire obligation by check on November 12, 1998, 63 days after the shipping date. These were the first and only orders for which the defendant was paid. Three other orders evidenced by three other invoices with an order date of November 6, 1998 were shipped but payment was never made.

Testimony by Wayne Spencer, Chief Financial Officer of Village Trading, concerned the average collection period for payment on orders for casegoods. An exhibit introduced at this time, a chart prepared by the American Furniture Manufacturers Association, showed that the average collection period was 56.7 days. Mr. Spencer also testified that 93% of his company's receivables were 58 days old or older.

At the time the transfers were made, the sum of the debtor's debts exceeded the fair value of its property, and the evidence is sufficient to find that the debtor was insolvent on the date of the subject transfers. The transfers were made for the benefit of the defendant on account of an antecedent debt, and resulted in the defendant receiving more than it would have if this were a Chapter 7 case and the transfer had never been made.

### 2. *Conclusions of Law*

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b); it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). It is uncontroverted that the subject transfers from the debtor to the defendant were preferential, as they meet all the criteria of 11 U.S.C. § 547(b). This section provides that

> the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Each of these elements was demonstrated by the testimony of Darlene Collins, the account manager for the debtor, or Elizabeth Woodward, a CPA who was appointed the Certified Representative of the debtor in April 2000. In conjunction with these witnesses' testimony, documentary evidence was presented of the debtor's financial condition, and the debtor's record of orders from and payments to the defendant. As stated above, the defendant did not controvert any of the evidence that established that the subject transfer met the elements of a preferential transfer as set out above.

The only issue before the Court, therefore, is whether the defendant may avail itself of the defense found in 11 U.S.C. § 547(c)(2), the so-called "ordinary course of business" defense. In order to make this determination, the Court must engage in a "peculiarly factual analysis." *In re Fulghum Construction Corp.*, 872 F.2d 739, 743 (6th Cir.1989). Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business of the debtor and the transferee; and

(C) made according to ordinary business terms;

In order to prevail, the defendant must prove each element by a preponderance of the evidence.

The application of 11 U.S.C. § 547(c) has been the subject of much debate, and has generated several significant cases from the Sixth Circuit. The requirements for demonstrating the exception were set out in *In re Fred Hawes Organization, Inc.*, 957 F.2d 239 (6th Cir.1992). A transferee may not use the same standard to prove all the elements of § 547(c)(2). Subsection (A) is demonstrated relatively easily by a showing that each party was engaged in its usual business when the debt was incurred and the transfer took place. Subsection (B) has been determined to be the "subjective" prong, while subsection (C) is the "objective" prong.

The subjective prong requires proof that the transaction between the debtor and the transferee was ordinary as to them; the objective prong requires proof that the transaction was ordinary in relation to standards prevailing in the relevant industry. *See also In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.*, 9 F.3d 680, 682 (8th Cir.1993)(transferee must prove the three statutory elements by a preponderance of the evidence); *WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*, 840 F.2d 996, 1010–11 (1st Cir.1988) (each of the three elements must be satisfied by the creditor); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3rd Cir.1989) (creditor must prove all three "statutory conjunctive elements"); *In re Air South Airlines, Inc.*, 247 B.R. 153, 159 (Bkrtcy.D.S.C.2000) (Subsections (B) and (C) provide subjective and objective tests which require separate analyses).

The *Fred Hawes* court elaborated on the elements required to establish subsection (B), noting that such a determination required a fact specific analysis as set out in *Fulghum, supra.* The court further noted that in making such an analysis, courts examine several factors, "including timing, the amount and manner a transaction was paid and the circumstances under which the transaction was made." (quoting from *In re Yurika Foods Corp.*, 888 F.2d 42, at 45 (6th Cir.1989)).

*See also In re Tennessee Chemical Company,* 112 F.3d 234, 237 (6th Cir.1997). As concerns late payments the court stated that a "late payment will be considered 'ordinary' only upon a showing that late payments were the normal course of business between the parties." At 244, citing *Yurika Foods* and *Fulghum.*

 The plaintiff maintains that it is impossible for the defendant to satisfy the requirements of subsection (B) because the defendant and the debtor had no prior history of dealing; the subject transactions were the first between them. The plaintiff cites a decision by this court, *In re Winters,* 182 B.R. 26, 28 (Bkrtcy.E.D.Ky.1995), for the proposition that § 547(c)(2) does not apply to isolated, single transactions. This Court did so hold, but the circumstances of the *Winters* matter were such as to make that decision less than instructive here. First of all, the transfer in question was a garnishment by judgment creditors. Acquisition of a garnishment lien has been held to be a transfer for purposes of § 547(b)(2). *In re Jones,* 47 B.R. 786 (Bkrtcy.E.D.Va.1985). That garnishment by its nature, however, was not part of a recurring business relationship. In addition, the creditors never made an actual § 547(c)(2) argument to the Court so as to demonstrate that the underlying transaction fit within the exception.

The Sixth Circuit has spoken on the issue of whether an isolated transaction may be in the ordinary course of a debtor's financial affairs in *In re Finn,* 909 F.2d 903 (6th Cir.1990). There the court held that

as a general rule, subject to the individual fact-finding powers of the district court in a specific inquiry, a transaction can be in the ordinary course of financial affairs even if it is the first such transaction undertaken by the customer. This rule holds where the transaction would not be out of the ordinary for a person in the borrower's position.

At 908. As the court had earlier observed, "every borrower who does something in the ordinary course of her affairs must, at some point, have done it for the first time." *Id.*

 As concerns subsection (C), the defendant must show that the transaction "comports with the standard conduct of business within the industry." *Fred Hawes,* 957 F.2d at 246; *Yurika Foods,* 888 F.2d at 45. Further, in *In re Carled, Inc.,* 91 F.3d 811, 818 (6th Cir.1996), the court held that " 'ordinary business terms' means that the transaction was not so unusual as to render it an aberration in the relevant industry." The *Carled* court had considered the decision in *In re Tolona Pizza Prods. Corp.,* 3 F.3d 1029 (7th Cir. 1993), in which the court had held that

"ordinary business terms" refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection (C).

At 1033. The *Carled* court obviously agreed with this approach.

Applying the subjective and the objective standards set out above to the within matter, it is clear that the easier determination is in regard to § 547(c)(2)(C), the "objective prong." The Court concludes that the correct date for beginning the count of the number of days the payment for the goods was late was the shipping date of September 10, 1998. The Court further believes that there was sufficient testimony and documentary evidence shown to conclude that a payment period of around 60 days was in within the scope of ordinary business terms satisfying subsection (C), and certainly not an "aberration."

It is more difficult to conclude that the defendant has proven that the transfer was within the scope of subsection (B). All of the cases which discuss the "subjective prong" assume that the parties have a

history against which the transaction in question may be measured. In this instance, the parties' history begins with that transaction and the court must give sufficient weight to the terms the parties agreed to where there is no history demonstrating their disregard of the payment terms set out on the invoices. Even the *Finn* case, cited above for the proposition that an isolated transaction may be in the ordinary course of a debtor's affairs, is not entirely supportive as it does not address whether the isolated transaction is in the ordinary course of business for the debtor **and** the creditor. The focus of subsection (B) is the state of the relationship between the debtor and the creditor, and it requires analysis of that relationship.

Other cases which have purported to find that an isolated transaction may satisfy subsection (B) have been distinguishable as well. In *In re Morren Meat and Poultry Co., Inc.*, 92 B.R. 737, 740 (W.D.Mich. 1988), the district court interpreted subsection (B) to mean that each party's "ordinary course of business" must be examined; the parties' course of dealings with each other was discounted as not crucial to the court's determination. This case was, of course, decided before the *Fred Hawes* court set out the criteria for proving that all the subsections of § 547(c)(2) had been satisfied. In *In re Tulsa Litho Co.*, 229 B.R. 806, 810 (10th Cir. BAP 1999), the panel found that subsection (B) had been satisfied where the transaction was the first between the debtor and the creditor, but the debtor was a subsidiary of an entity with whom the creditor had a history of doing business. The debtor paid the creditor in accordance with the parent's established payment practices.

This Court must therefore conclude that the defendant here has not demonstrated by a preponderance of the evidence that it is entitled to avail itself of the defense to a preferential transfer provided by 11 U.S.C. § 547(c)(2), specifically in that it is not able to satisfy the requirements of subsection (B). The Court concludes therefore that

the plaintiff is entitled to judgment on its Complaint.

Plaintiff's attorney shall prepare and submit an appropriate judgment.