Joseph G. Rosania, Jr., United States Bankruptcy Judge
For over two hundred years the concept of equality in treatment of creditors has been viewed as the most important principle of American bankruptcy law, rivaled only by the concept of a fresh start for honest but unfortunate debtors. Creditor equality was given a ringing endorsement in the influential 1807 case of Locke v. Winning , 3 Mass. 325 (Mass. 1807). The concept of recovery of preferential transfers was found in the 1841, 1867 and 1898 Bankruptcy Acts.
Procedural Background
Plaintiff Atna Liquidating Trust, Kenneth J. Buechler, Liquidating Trustee ("Trustee"), sued to avoid and recover certain transfers made by CR Briggs Corporation (the "Debtor")[1] to Defendant Black *584 Diamond Blade Company d/b/a Cutting Edge Supply ("Cutting Edge") as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 on April 25, 2017.[2] Specifically, the Trustee seeks to avoid and recover three transfers aggregating $ 49,979.50 identified in Exhibit A to the Complaint (the "Transfers"). The Transfers were payments Debtor made to Cutting Edge during the ninety day period prior to the filing of the petition on November 18, 2015 (the "Preference Period").
After discovery, Cutting Edge timely moved for summary judgment, arguing the Transfers were made in the ordinary course of business or financial affairs of the Debtor and Cutting Edge. Therefore, Cutting Edge contends it is entitled to judgment as a matter of law that the Transfers are excepted from avoidance pursuant to § 547(c)(2)(A). The Trustee responded to the Motion and asserted a Cross Motion for summary judgment. Cutting Edge then filed a response in which it requested denial of the Trustee's Cross Motion as untimely, or, alternatively, denial on the merits. However, at the hearing, the parties stipulated that there were no genuine issues of material fact in dispute and the matter was ripe for determination by the Court on summary judgment.
Factual Background
Cutting Edge is a distributor of products, tools, and equipment for the mining, construction, materials processing, and waste and recycling industries. The Debtor was engaged in mineral exploration and mining operations in California. In December 2013, Debtor and Cutting Edge entered into a Consignment Agreement ("Agreement"), under which Cutting Edge sold products needed for mining operations to Debtor. The Transfers were payments made to Cutting Edge in payment for products purchased by the Debtor under the Agreement.
Prior to the Preference Period, Debtor paid twenty-two Cutting Edge invoices issued between January 2014 and March 2015. During this time period, Debtor paid each and every invoice in full. The Agreement was silent on payment terms. While the invoices called for payments to be made in thirty days of the date of each invoice, Debtor made payments from 43 days to 127 days after the date of the corresponding invoice.
In the Preference Period, Debtor made three payments to Cutting Edge. Cutting Edge issued one invoice on May 28, 2015, in the amount of $ 34,979.40, and a second invoice on June 30, 2015, in the amount of $ 33,871.90. Debtor did not pay either of these invoices in full. Instead, Debtor paid $ 17,489.70 on August 31, 2015 (95 days after the first invoice date), $ 17,489.70 on September 9, 2015 (104 days after the first invoice date), and $ 15,000 on October 9, 2015 (101 days after the second invoice date). Cutting Edge did not engage in any usual collection activities related to the Transfers.[3]
Jurisdiction
The Court has jurisdiction over the parties and subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(F).
Summary Judgment Standards
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, *585 admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(d) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056 ) ). The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Whitesel v. Sengenberger , 222 F.3d 861, 867 (10th Cir. 2000). All of the evidence must be viewed in a light which is most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 250 n.5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Discussion
When a debtor pays a creditor prior to the filing of a bankruptcy, the Bankruptcy Code allows for the avoidance of such payments in certain circumstances as set forth in § 547(b) as follows:
(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made-
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if-
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
The burden is on the Trustee to prove all of the elements of a preference under § 547(g). The Trustee filed a Cross Motion for Summary Judgment on December 13, 2017. Cutting Edge responded and opposed the Cross Motion on December 27, 2017. A review of Cutting Edge's response to the Cross Motion for Summary Judgment reflects it admitted the elements of a preferential transfer claim under § 547(b). Cutting Edge admitted paragraphs 10, 11, 12, 13, 14, 15 and 16 and does not contest (which this court views as an admission) paragraphs 20 and 24 of the Cross Motion.
Specifically, Cutting Edge admitted the allegations set forth in the aforementioned paragraphs that it received transfers of the Debtors' property totaling $ 49,979.50 on account of antecedent debt with ninety days of the Debtor's bankruptcy case made while the Debtor was insolvent and which enabled Cutting Edge to receive more than it would have had the transfers not been made and it received payment of its debt in a chapter 7 case of the Debtor.
Cutting Edge argues the Transfers are excepted from avoidance pursuant to the "ordinary course of business" ("OCB") defense in § 547(c)(2). To prove an exception to avoidance under § 547(c)(2), Cutting Edge bears the burden of proof of establishing the exception by a preponderance of the evidence. § 547(g) ; Jubber v. SMC Elec. Prods. (In re C.W. Mining Co.) , 798 F.3d 983, 987 (10th Cir. 2015).
To prevail on the OCB defense, a defendant must prove that an allegedly preferential transfer was made: (1) in payment of a debt incurred by the debtor in the ordinary course of business, and (2) either the *586 transfer was (i) made in the ordinary course of business of the debtor and defendant, or (ii) the transfer was made according to ordinary business terms. C.W. Mining , 798 F.3d at 991.
In the case of Weinman v. New Penn Motor Express (In re Office Source, Inc. , 2013 WL 6507186 (Bankr. D. Colo. 2013), Judge Howard Tallman (ret.) stated:
Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a preference defendant asserting an "ordinary course of business" defense had to show both that the transfers were ordinary as between the parties and that the transfers were ordinary in the relevant industry, which required a defendant to provide evidence of prevailing practice among similarly situated members of the industry facing the same or similar problems. See Payne v. Clarendon National Ins. Co. (In re Sunset Sales, Inc.) , 220 B.R. 1005 (10th Cir. BAP 1998) (a pre-BAPCPA case); see generally Charles J. Tabb, The Brave New World of Bankruptcy Preferences, 13 Am. Bankr. Inst. L. Rev. 425 (2005) (discussing changes made by BAPCPA). With the change made in the BAPCPA, from "and" to "or," Congress significantly eased the burden on defendants asserting an ordinary course of business defense.
Id. at *4.
However, the defense must be narrowly construed. Jobin v. McKay (In re M & L Bus. Mach. Co.) , 84 F.3d 1330, 1339 (10th Cir. 1996). When determining the ordinary course of the parties' business under § 547(c)(2)(A), courts apply a "subjective" standard, looking to the way the parties actually conducted their business dealings. Lovett v. St. Johnsbury Trucking , 931 F.2d 494, 497 (8th Cir. 1991) ; Tulsa Litho Company v. BRW Paper Co., Inc. (In re Tulsa Litho Company) , 229 B.R. 806, 810 (10th Cir. BAP 1999).
In considering whether the transfers occurred according to the ordinary course of the parties' business, courts in the Tenth Circuit must consider the following four factors:
(1) the length of time the parties were engaged in the transaction in issue;
(2) whether the amount or form of tender differed from past practices;
(3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
(4) the circumstances under which the payment was made.
In re Sunset Sales , 220 B.R. at 1020-21.
Courts typically consider these factors by comparing pre-preference period transfers with preference period transfers. Id. at 1021. "Although there are four factors, courts often focus upon one of these factors and any significant alteration in any one of the factors may be sufficient to conclude that a payment was made outside the ordinary course of business." In re Furr's Supermarkets , 373 B.R. 691, 706 (10th Cir. BAP 2007) (internal quotation marks omitted).
The clear purpose of the "ordinary course of business" exception "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H. R. Rep. No. 595, 95th Cong., 1st Sess. 373, reprinted in 1978 U.S.C.C.A.N. 5963, 6329; see S. Rep. No. 989, 95th Cong., 1st Sess. 88, reprinted in 1978 U.S.C.C.A.N. 5787, 5874.
*587 Analysis
The parties spent their time arguing about the timing of the payments. Neither side focused on the amount of the payments. The amount of the payments made by the Debtor within the preference period differed markedly from the amount of the payments made by the Debtor before the preference period. The Debtor paid each invoice amount in full before the preference period. However, the Debtor's payment practices differed within the preference period. Here, two of the three payments made within the preference period were split payments in identical amounts ($ 17,489.50) paying one-half of the invoice amount in one case and almost one-half the invoice amount in the other case, and the third payment ($ 15,000) was in a round dollar amount which did not correspond to the amount of any of the invoices.
The Tenth Circuit Court of Appeals found that a one-time payment of $ 200,000, arising from a first-time transaction between the parties, was within the ordinary course of business in C.W. Mining. In that case, there was not a pattern of prior dealings with which to compare the single payment. However, when the terms of payment deviate from prior dealings, the OCB defense may not apply.
The bankruptcy court in the case of In re Ewald , 45 B.R. 52, 58-59 (Bankr. D. Minn. 1984), held that split payments were outside of the ordinary course of business of the parties. In Ewald , the debtor made split payments within the preference period and had never made split payments before the preference period, and the court found that as a result of splitting the payments only within the preference period, such payments were not ordinary.
The bankruptcy court in the case of In re Radnor Holdings Co. , 2009 WL 2004226 (Bankr. D. Del. 2009), reached a similar result where the amount of the payments and full versus partial payments were different within the preference period. The Radnor court held:
Further, during the Preference Period, as to the payments at issue, Debtors paid Defendant exclusively in multiples of $ 5,000 and always in partial payment of the applicable invoice. During the Historical Period, Debtors paid Defendant the exact applicable invoice amount as to all but one invoice and never in multiples of $ 5,000. The significant discrepancies evident in these differing payment practices-spanning timing, payment amount, and full versus partial payment-demonstrate convincingly that the disputed payments during the Preference Period were not in the ordinary course of business. That Defendant did not take advantage of Debtors' deteriorating financial condition or otherwise take unusual action as to collecting its debts does not negate the fact that Debtors' payment practices as to these four payments differed markedly from the payment practices during the Historical Period. Accordingly, I find that the four payments at issue were not in the ordinary course of business, and thus do not fall within § 547(c)(2)(A). The four identified payments are avoidable and recoverable as preferential transfers.
Id. at *6.
Conclusion
The Debtor's split payments and payment of a round dollar amount were markedly different than the amounts of the payments made within the preference period. These "significant discrepancies....demonstrate convincingly that the disputed payments were not in the ordinary course of business". Id. at *6.
Thus, based upon this conclusion, the Court need not address the timing of the *588 payments question. Since Cutting Edge has failed to satisfy its burden of proof to prove the OCB defense under § 547(c)(2)(A), the Trustee's cross motion for summary judgment (docket number 13) be and hereby is GRANTED and judgment shall enter in favor of the Plaintiff and against the Defendant in the amount of $ 49,979.50 under §§ 547(b) and 550(a)(1).

CR Briggs Corporation (15-22850) is one of the Debtors in cases jointly administered under Atna Resources, Inc. (15-22848).

Unless otherwise indicated, all future statutory references are to Title 11 of the United States Code.

Unsworn Declaration Under Penalty of Perjury of Brian Tramison, Controller of Cutting Edge Supply, attached to Cutting Edge's Motion for Summary Judgment.