In re **AGENCY REFRIGERATION & AIR CONDITIONING, INC.**, Debtor.

Dennis G. **BEZANSON**, Trustee, Plaintiff,

v.

**TEKON TECHNICAL CONSULTANTS, INC.**, Defendant.

Bankruptcy No. 85–026.
Adv. No. 85–88.

United States Bankruptcy Court, D. New Hampshire.

March 20, 1986.

---

878

Dennis Bezanson, South Portland, Me., Trustee.

Charles Corlin, Tekon Technical Consultants, Inc., Rochester, N.H., for defendant.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This matter was tried before the court on January 14, 1986 on the trustee's Complaint, as amended, alleging a preferential transfer pursuant to 11 U.S.C. § 547(b) in the amount of $550.00 and the defendant's Answer thereto. Pursuant to this court's pre-trial Order of December 9, 1985, the sole affirmative defense raised by the defendant and heard at trial was whether or not the transfer was made in the ordinary course of business and hence would fall within the exception to recovery by the trustee provided in § 547(c)(2).

In this case the debtor filed a voluntary petition under Chapter 11 on January 25, 1985. The case was converted to Chapter 7 on April 2, 1985.

The transfer in question is the debtor's payment to the defendant by check dated November 9, 1984 in the amount of $550.00. From the evidence it appears that the defendant had a contract with the debtor whereby the defendant was to test certain air conditioning systems on a job which the debtor was under contract to perform for the New England Telephone Co. In short, the defendant was a subcontractor vis à vis debtor's contract with New England Telephone.

The defendant's president, Charles A. Corlin, Jr., testified that the first dealings his company had with the debtor occurred in approximately July 1984. Defendant verbally proposed and performed its first work for debtor in August 1984. This work was billed to the debtor by defendant's invoice dated August 30, 1984 in the amount of $550 and constitutes the job for which debtor allegedly paid in the ordinary course.

While Mr. Corlin's company had had no previous relationships with the debtor, Mr. Corlin had dealt with Agency's project manager, a Mr. Ken Duchesne, on other occasions. Mr. Corlin testified that Mr. Duchesne was the Agency Refrigeration representative involved in the dealings between debtor and defendant discussed in these proceedings. However, according to Mr. Corlin, he and Mr. Duchesne never discussed *when* Agency would pay Tekon for the subcontract work Tekon performed.

Mr. Corlin testified that Tekon usually begins to pursue a debt when it has remained unpaid for 45 days. It does so at that time on the theory that the general contractor it is directly dealing with should have been paid by then. Mr. Corlin also testified that Tekon's policy is that it generally expects to get paid when its general or subcontractor gets paid, and in the same ratio. However, on similar jobs for telephone company contractors, Tekon's experience was that it would get paid 40 to 90 days after the work was done. A telephone company engineer usually had to approve contract work before that company paid it's contractors.

According to Mr. Corlin, Tekon's usual method of collecting its payments in subcontract situations, was to contact its gen-

eral contractor or the contractor next-above Tekon. The uncontroverted evidence is that Tekon telephoned the debtor concerning the $550.00 in question on November 8, 1984 and was told that Agency would pay the debt "this Friday".

In response to the question of whether Tekon had had other "contacts" with the debtor during the time period to which his testimony had referred, Mr. Corlin indicated that the only other "contacts" between the defendant and the debtor had been Tekon's bids on two other jobs for the debtor. Tekon in fact performed two additional subcontract jobs for the debtor prior to receiving payment on the first. These two additional jobs were bid by Tekon at $950 and $400 but Tekon never received payment for either.

In addition to Mr. Corlin's testimony, the court also heard the testimony of Frank Williams, the president of the debtor. Mr. Williams stated that Agency Refrigeration did *not* pay Tekon at the time Agency was paid by New England Telephone.

The relevant statutory section provides as follows:

*§ 547. Preferences*

\* \* \* \* \* \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

However:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

Under the facts of the instant case, this court must find that the payment at issue *was* made in the ordinary course of business of the debtor and the transferee, Tekon Technical Consultants, Inc., and hence is not avoidable by the trustee. Certainly the transfer was in payment of a debt *incurred* by the debtor in the ordinary course of its business and that of Tekon, within the meaning of § 547(c)(2)(A). The trustee-plaintiff offered no evidence or argument in support of a contrary finding. Neither is it seriously contended that the payment by the debtor was not made according to ordinary business terms. § 547(c)(2)(C).

The real dispute in this matter centers on the question of whether or not the payment was *"made* in the ordinary course of business ... of the debtor and the transferee." § 547(c)(2)(B) (emphasis added). The trustee's basic position is that debtor's November 9, 1984 payment of an invoice dated August 30, 1984 was sufficiently outside the creditor's usual mode of conducting its business as to make that payment a preferential transfer avoidable by the trustee under § 547.

Contrary to the trustee's argument, the actual conduct of the parties, in the context of the contract and sub-contract involved, points in the opposite direction. The debtor

paid Tekon by check dated November 9, 1984 as it had informed Tekon it would at the time that Tekon, following its usual practice of contacting its next-above contractor, telephoned the debtor on November 8, 1984. Thus, debtor's payment to Tekon was made 70 days after the date of Tekon's August 30, 1984 invoice to debtor. While the payment itself and even Tekon's telephone call to debtor were thus well after the 45 day limit by which Tekon usually began pursuing its unpaid debts, the payment was well within the 40 to 90 day period which Tekon had experienced in the past for payment on work involving the telephone company. Simply put, Tekon's 45 day deadline was far from absolute, and in fact there never was any specific agreement *by both parties* that a "due date" occurred 45 days after the billing. Additionally, given that an outside party had to approve the work before payment, the court can only conclude that, in the circumstances, Tekon waited a reasonable time for its contractor, the debtor, to be paid by the telephone company and in turn, for debtor to forward payment to Tekon.

Finally, the court cannot ignore the fact that from Tekon's point of view, what was happening with its expected $550 payment from the debtor was sufficiently within its ordinary course to justify Tekon in going out on a limb to bid on *and perform* two additional jobs for debtor before it had been paid the $550 in question for the first job. This corroborates the tacit agreement of the parties that the billing was not "past due" on November 9, 1984.

In sum, the evidence establishes that the ordinary course of business between these parties was fairly fluid and that the payment by debtor was not outside the usual manner of conducting this type of business.[1]

For all the foregoing reasons the court will, separately, enter judgment for the

defendant and against the trustee-plaintiff in this matter.

---

1. The Court notes that prior to the 1984 Amendments to the Bankruptcy Code, § 547(c)(2) limited to 45 days the period of delay that would be deemed in the ordinary course of business for preference purposes. The elimination of this limit indicates a legislation judgment that "course of business" can be interpreted broadly in terms of the *actual situation* of the particular creditor and debtor.