In re MORREN MEAT AND POULTRY COMPANY INC., d/b/a Morren Foods, Debtor,

Richard REMES, Trustee of Morren Meat and Poultry Company, Inc., d/b/a Morren Foods, Appellant–Plaintiff,

v.

ASC MEAT IMPORTS, LTD., Appellee–Defendant.

No. K–86–313–CA–4.

United States District Court, W.D. Michigan, S.D.

June 29, 1988.

Lisa J. Sommers, Detroit, Mich., for appellant-plaintiff.

Robert E.L. Wright, Kalamazoo, Mich., for appellee-defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Before this Court is an appeal from the Bankruptcy Court by Plaintiff–Appellant, Richard Remes, Trustee of Morren Meat and Poultry Company (Morren), seeking to void a transfer from debtor Morren to transferee, ASC Meat Imports, Ltd. (ASC), as a preference, having occurred within 90 days of Morren filing bankruptcy.

## BACKGROUND

Morren is a meat wholesaler to retail merchants. ASC is a supplier to meat wholesalers. Morren purchased meat from ASC only once and paid for it with two checks. The details of the transaction are as follows. Morren placed its single, one-time order for meat with ASC. On September 14, 1984, ASC issued an invoice, No. 2097, in the amount of $41,580.00 to Morren. The preprinted invoice provided a seven day payment term and a 1.5% 30 day service charge term:

TERMS—NET CASH 7 DAYS

. . . .

A service charge of 1.5% per month may be computed on all balances outstanding over 30 days. Annual percentage rate 18%.

Morren received the goods from ASC on September 18, 1984. On October 15, 1984, 31 days after the invoice date and 27 days after receipt of the goods, ASC received Morren's company check for $20,790 equalling one-half of the invoice total. On October 24, 1984, 40 days after the date of the invoice and 36 days after delivery of the goods, ASC received Morren's second check for $20,790.00 equalling one-half of the invoice total. Each of the two payments were made within 90 days of Morren's filing for bankruptcy. No evidence indicates that ASC demanded payment

within seven days or attempted to assess and collect a service charge during the term that the bill was unpaid, as provided in the invoice, rather ASC accepted the checks as payment in full.

Morren's Trustee claims that the two payments constitute a preference since they were made within 90 days of Morren's filing bankruptcy. The creditor-transferee ASC, on the other hand, maintains that the transfers satisfied a debt made in the ordinary course of business and were paid according to ordinary business terms. Accordingly, ASC asserts that the trustee cannot void the transfers because they qualify under the ordinary course of business exception to the trustee in bankruptcy's avoiding powers as specified in § 547(c)(2) of the Bankruptcy Code, 11 U.S. C. § 547(c)(2). Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer— ...

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

This Court notes that Congress amended the Bankruptcy Code in 1984 (Bankruptcy and Federal Judgeship Act of 1984, Pub.L. No. 98–353, [BAFJA]) and deleted the 45 day rule in former § 547(c)(2)(B), which additionally required that the ordinary course of business payment be, "made not later than 45 days after such debt was incurred." Originally Congress selected the 45 day period as a "normal trade credit cycle.... Congress treated as nonpreferential an ordinary course payment of trade credit in the first 15 days of the month following the month in which the goods were shipped or the services were performed." Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr. L.J. 173, 186–187 (1979).

However, Appellant Trustee argues that the ordinary business exception of 11 U.S. C. § 547(c)(2) does not apply an isolated business transaction because no ordinary course of business has been established. Further, Appellant Trustee contends that if § 547(c)(2) does apply then the preprinted seven day payment term establishes the course of business as between Morren and ASC. Since Morren paid ASC in two checks, 31 and 40 days after the invoice date, Appellant Trustee concludes that the transfers were outside of the ordinary course of business as defined by the seven day payment term. Appellant Trustee also asserts that the existence of the 30 day service charge term does not supplant the seven day payment term with the 30 day service charge period. The 30 day service charge provision does not modify or waive the ordinary course of business as established by the seven day payment term. Additionally, Appellant Trustee argues that: (1) the debtor's and transferee's individual dealings with third parties are not germane to availability of the ordinary business exception to the disputed transfers between Morren and ASC, (2) the number of preference actions filed by the Appellant Trustee is not relevant in evaluating the Morren–ASC transfers, and (3) the 45 day rule is not relevant to the present dispute because Congress deleted it from the Code.

ASC responds that the ordinary business exception properly does apply to the two disputed transfers. ASC claims that the mere fact that no prior course of dealing existed does not render the ordinary business exception inapplicable. ASC relies on *In re: Agency Refrigeration & Air Conditioning, Inc.,* 58 B.R. 877, 878 (Bankr.D.N. H.1986) where the ordinary course of business exception applied, although no payment term existed. Moreover, ASC argues that the payment and service charge terms on the preprinted invoice forms do not establish the "ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(B). Rather, ASC contends, if Morren's and ASC's ordinary course of business was es-

tablished at all, then it was established by their initial and isolated transaction.

## ANALYSIS

This Court initially recognizes Congress' intent in passing 11 U.S.C. § 547 as:

[Its] purpose is to leave undisturbed normal financial relations, because [doing so] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

H.R.Rep. No. 595, 95th cong., 1st Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6329. Other courts have similarly acknowledged Congress' intent:

The trustee's power to avoid transfers is intended to discourage creditors from racing to the courthouse to dismember a failing debtor, thus enabling the debtor to solve its difficult financial situation. The Section 547(c)(1) and (2) exceptions further the goal of enabling debtors to rehabilitate themselves by insulating normal business transactions from the trustee's avoidance power. Without these exceptions creditors would be reluctant to conduct business with a struggling enterprise for fear that any payments made by the debtor could later be avoided. A crabbed reading of the Section 547(c)(2) exception would only undermine this beneficial purpose.

*O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984).

This Court recognizes the fundamental issue in this dispute as whether the two transfers made within 40 days of the invoice date in an isolated and solitary transaction were sufficiently in the ordinary course of business for purposes of 11 U.S.C. § 547(c)(2)(A), (B), and (C).

■ As an exception to trustee's in bankruptcy powers of avoidance, the burden is on ASC to establish the applicability of the exception. *In re: McCormick*, 5 B.R. 726, 730 (Bkrtcy.N.D.Ohio 1980). The parties do not dispute that Morren's debt to ASC was incurred in the ordinary course of business and thereby satisfies 11 U.S.C. § 547(c)(2)(A).

■ The parties do dispute whether the transfers were "made in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(B). Some courts have interpreted this section to contemplate an evaluation of the course of dealing between the parties themselves. *In re: Ewald Bros.*, 45 B.R. 52, 56–57 (Bkrtcy.Minn.1984); *In re: Production Steel*, 54 B.R. 417 (Bkrtcy.M.D.S.Tenn.1985). This Court concurs that the course of dealing between the parties themselves is indeed a factor to consider and that § (B) contemplates an evaluation of the parties prior subjective dealings, when such exist. However, this Court is not convinced that § (B) requires a history of prior dealings as a *sine qua non* in order to afford a transferee the protections of § 547(c)(2). Section (B) specifies a transfer "made in the ordinary course of business or financial affairs of the debtor and transferee." The statute states: "affairs of the debtor *and* the transferee," (emphasis added) not "affairs between the debtor and the transferee." The existence of prior dealings between the parties would definitely aid this Court in assessing the ordinary character of the transfers, but the absence of such prior dealings certainly does not preclude this Court from determining that the transfers were ordinary for purposes of § 547(c)(2). Again, the issue is whether the transfers were sufficiently ordinary to invoke the protection of § 547(c)(2).

■ As between the parties themselves, this Court finds that the ordinary course of dealing is not adequately defined by either the parties' prior course of dealings or the invoice terms. As to the former, no prior course of dealings exists. As to the latter, the invoice terms were not specifically assented to by Morren. Further, the TA provides no authority for its assertion that, "this Court must rule that the terms of the transaction between them establish both the ordinary course of business between the Debtor and ASC under § 547(c)(2)(B) *and* ordinary business terms under § 547(c)(2)(C)." Furthermore, this Court acknowledges that the parties' actual conduct could potentially modify contractual

terms and practically define the parties' ordinary course of business. And this Court does recognize, however, that the only course of business between the parties is their respective conduct in the instant case. This Court notes that ASC did not attempt to enforce the preprinted 7 day payment term or 30 day service charge provision. Rather, ASC accepted Morren's split payment as payment in full without assessing any service charge and without question. Thus, this Court is not convinced that here, in the case of an isolated transaction preprinted terms on a invoice definitively define the ordinary course of business for purposes of § 547(c)(2).

While the ordinary course of business remains undefined, this Court notes the absence in these two transfers of any indicia suggesting unusual conduct between Morren and ASC removing the transfers out of the ordinary course of business. The transfers were simply payments on an open book account with no unusual attempts at collecting on the debt.

The parties also dispute whether the transfers were, "made according to ordinary business terms." § 547(c)(2)(C). Whereas § (B), in part, provides a subjective test as between the parties, § (C) provides an objective test to further qualify a transfer for protection under the ordinary business exception. Section (C) is not limited by the phrase, "of the debtor and the transferee." Although the statute is silent on the scope of the courts' purview in evaluating "ordinary business terms," courts may and do properly consider normal business terms within the industry. *In re: Production Steel*, 54 B.R. 417 (Bkrtcy.M. D.S.Tenn.1985). Therefore, the phrase, "ordinary business terms" for purposes of § (C) is not limited to the course of prior dealing between the parties themselves or the preprinted invoice terms. Accordingly, this Court notes the affidavit of Richard Atkinson which indicates in paragraphs 12–14:

12. That the sale to the Debtor was in the ordinary course of business and according to ordinary business terms.

13. That the payments made by the Debtor were made in the ordinary course of business and according to ordinary

business terms, it being customary in the meat processing business for purchasers to make partial payments for shipments.

14. That approximately twenty (20%) percent of all sales made by ASC are paid for by partial payments, and 95% are paid for more than 7 days after delivery.

Again, this Court notes that no attendant circumstances exist suggesting anything other than payment according to ordinary business terms. There were no NSF, cashier's, or certified checks, no advance or C.O.D. payments, and no wire transfers. Based upon the materials submitted, this Court finds that the goods were simply ordered, shipped, and paid for according to ordinary business terms within the meat processing industry.

### CONCLUSION

Accordingly, this Court denies the appeal of Richard Remes, Trustee of Morren Meat and Poultry Company, Inc. d/b/a Morren Foods from the Order of the Bankruptcy Court (Nims, J.) in NK–84–03823, dated July 28, 1986.