In re Murray F. ARMSTRONG.

William S. Meeks, Trustee, Plaintiff,

v.

Harrah's Tunica Corporation d/b/a Harrah's Casino Cruises–Tunica, Defendant.

Nos. 96–50087S, PB–C–99–126.

United States District Court,
E.D. Arkansas,
Western Division.

March 30, 2001.

Thomas S. Streetman, Streetman & Meeks, Crossett, AR, for Plaintiff.

Richard L. Ramsay, Eichenbaum, Liles & Heister, P.A., Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Harrah's Tunica Corporation d/b/a/ Harrah's Casino Cruises–Tunica (Harrah's) appeals the bankruptcy court's decision finding that the trustee was entitled to avoid $50,000.00 in gambling transfers by Murray F. Armstrong (debtor) to Harrah's as a preference pursuant to 11 U.S.C. § 547(b).

Trustee William S. Meeks (trustee) also cross-appeals the bankruptcy court's decision because the bankruptcy court did not address the trustee's assertion that the transfers should be voided as well under 11 U.S.C. § 548(a)(1), actual fraud, and Arkansas Code Annotated § 16–118–103, an Arkansas anti-gambling statute, and the refusal of the bankruptcy court to award the trustee prejudgment interest. The Court affirms the bankruptcy court.

### I.

### BACKGROUND

On October 12, 1995, debtor visited Harrah's Casino in Robinsonville, Mississippi and applied for a $20,000.00 open line of credit which was granted. On the same day debtor's line of credit was increased to $30,000.00. On October 13, 1995, debtor's line of credit was increased to $50,000.00. This credit arrangement enabled debtor to sign markers in exchange for gambling chips. Debtor lost $50,000.00 on October 12 and 13, 1995. The $50,000.00 was evidenced by 26 markers which were dated October 12 and 13, 1995.

Harrah's agreed, when debtor was extended the credit line on October 12, 1995, to hold the markers for fourteen days, but on October 13, 1995, Harrah's agreed to

hold the markers for thirty days. All markers were drawn on debtor's farm account at the Bank of Rison, Rison, Arkansas. The markers were paid on November 15 and 16, 1995.

Debtor was placed in involuntary bankruptcy on January 30, 1996.[1] The trustee filed an adversary proceeding in the bankruptcy court against Harrah's endeavoring to avoid the gambling debts that debtor had paid Harrah's based on 11 U.S.C. § 547(b), preferential transfers, 11 U.S.C. § 548(a)(1), actual fraud, and Arkansas Code Annotated, § 16–118–103, an anti-gambling statute. On January 28, 1999, the bankruptcy court made findings of fact and conclusions of law which found that trustee was entitled to avoid all of the transfers as preferences under 11 U.S.C. § 547(b) and awarded a judgment in the sum of $50,000.00. The bankruptcy court denied prejudgment interest and did not rule on either trustee's assertion to avoid the transfers under 11 U.S.C. § 548(a)(1) or Arkansas Code Annotated, § 16–118–103. On February 3, 1999, the trustee filed a Motion to Reconsider asking the bankruptcy court to re-examine its decision not to rule on the § 548(a)(1) or the Arkansas anti-gambling statute claims asserted by the trustee to avoid the transfers. The Motion to Reconsider was denied by the bankruptcy court.

## II.

## DISCUSSION

Harrah's raises the following issues on appeal: (1) Whether the bankruptcy court erred in finding that gambling markers are debt instruments rather than negotiable instruments and payment of markers more than thirty days after issuance was a preference under 11 U.S.C. § 547(b). (2) Whether the bankruptcy court erred in finding that Harrah's did not prove Harrah's affirmative defenses that the transfers were of contemporaneous exchange for new value and that the transaction between debtor and Harrah's was in ordinary course of business under 11 U.S.C. § 547(c).

The trustee raises the following two issues on appeal: (1) The bankruptcy court erred in failing to address trustee's causes of action under 11 U.S.C. § 548(a)(1), actual fraud, and Arkansas Code Annotated, § 16–118–103, an anti-gambling statute. (2) The bankruptcy court abused its discretion in denying trustee prejudgment interest.

█ It is clear that the standard of review requires that the bankruptcy court's factual findings be reviewed for clear error and its legal conclusions de novo. *In re Howell Enters.*, 934 F.2d 969, 971 (8th Cir.1991).

A. Preference Provision Under
    11 U.S.C. § 547(b)(2)

█ Under 11 U.S.C. § 547(b) the trustee possessed the burden of proving five designated elements in order to avoid a transfer as a preference. § 547(b) provides:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property —

---

**1.** Debtor, a small town attorney in Star City and Rison, Arkansas, encountered financial problems in 1990. In an attempt to deal with this problem, debtor began operating a Ponzi investment project based on bogus timber contracts and sham land transactions. Endeavoring to pay his Ponzi debts, debtor began gambling in 1994 at riverboat casinos in Louisiana and Mississippi. In 1995, debtor entered upon an all-out check kiting scheme and embezzled large sums of money from his clients. In January 1996, debtor's schemes collapsed.

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made——

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if——

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The bankruptcy court found that the trustee had met its burden, but Harrah's argues that the trustee did not meet is burden of establishing element § 547(b)(2) by showing that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made;" inasmuch as, argues Harrah's, the markers received by debtor for which the transfer was made are negotiable instruments and, accordingly, the bankruptcy court clearly erred in finding that a "marker is an advance or loan commonly used by casinos which may be exchanged for cash or chips in order to gamble." In essence, Harrah's argues that debtor was not gambling on credit and that a marker is not a credit instrument, but is a check, a negotiable instrument; and that a marker is not an antecedent debt subject preference under § 547(b).

After carefully reviewing the record and the bankruptcy court's ruling, the Court is not persuaded that the bankruptcy court clearly erred in finding that trustee had met all of the elements of § 547(b), and specifically finding that "because the markers were obtained some thirty days prior to their payment, the debt was incurred before the preferential transfer and is, therefore, payment on an antecedent debt."

The evidence reflects that on October 12, 1995, debtor on his first visit to Harrah's applied for and received a $20,000.00 of line of credit and later increased to $30,000.00 the same day. On October 13, 1995, debtor was extended a line of credit in the sum of $50,000.00. It is Harrah's policy to investigate patron's financial background and obtain a credit report and information from the patron's bank before approving a patron's request for a line of credit. Harrah's received twenty-six markers from debtor totaling $50,000.00. Harrah's initially agreed to hold debtor's markers for fourteen days, but a day later, Harrah's extended the period to thirty days. On November 14, 1995, the markers were presented to debtor's bank for payment, but debtor's bank held the markers for a day in order to permit debtor to obtain funds to the cover the markers. The markers were paid on November 15 and 16, 1995.

The Court of Appeals for the Eighth Circuit in *United States v. Abodeely,* 801 F.2d 1020, 1022 (8th Cir.1986), made the following relevant observation:

    A marker is an advance or loan which may be exchanged at the hotel's casino for chips in order to gamble.

This Court is persuaded that the bankruptcy court did not clearly error in finding that payment of the gambling markers more than thirty days after issuance was a preference under 11 U.S.C. § 547(b). In

addition, the evidence reflects that debtor was insolvent at the time the transfers were made.

B. Exceptions Under § 547(c)

11 U.S.C. § 547(c) provides in material part:

(c) The trustee may not avoid under this section a transfer——

(1) to the extent that such transfer was——

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

(2) to the extent that such transfer was——

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

. . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor——

Harrah's argues that the trustee may not recover the $50,000.00 as a preference because Harrah's is protected: (1) by the new value it contemporaneously exchanged for the transfer and new value extended subsequent to the transfer; (2) the transfer was in payment of debt incurred in the ordinary course of business or financial affairs of the parties; (3) the transfers were made in the ordinary course of business or financial affairs of the parties; (4) that the transfers were made according to ordinary business terms.

■ The bankruptcy court in rejecting Harrah's new value exceptions found that "neither exception applies for the simple reason that no *new* value was given, either contemporaneously or subsequently as contemplated by the statute."[2] The evidence reflects that debtor was extended credit on October 12 and 13, 1995, resulting in the receipt of $50,000.00 in markers; and more than thirty days later—November 15 and 16, 1995—the markers were paid. This Court is persuaded that the bankruptcy court did not clearly err in finding that Harrah's by agreeing to hold the markers for thirty days for payment, the transfers were neither contemporaneous nor intended by the parties to be contemporaneous and that Harrah's never gave debtor new value. The transfers, indeed, constituted a preferential payment. In essence, debtor incurred the debt on October 12–13, 1995, when debtor signed the markers in exchange for the chips; and that the transfers occurred on November 15–16, 1995, when the markers were paid, thus satisfying the credit extended. See: *Union Bank & Trust Co. v. Banker* (*In re Tressler*), 771 F.2d 791, 794 (3rd Cir.1985)

---

2. The trustee argues that Harrah's for the first time on appeal contends that Harrah's is entitle to avoid the transfer based on 11 U.S.C. § 547(c)(4) (new value that is not secured by an unavoidable security interest and that the debt remain unpaid); that Harrah's did not assert this affirmative defense in either its pleadings or post trial brief and, accordingly, may not raise this defense on appeal. The trustee cites *Booth v. Seaboard Fire & Marine Ins. Co.*, 431 F.2d 212 (8th Cir.1970), *Golden Oil Co., Inc. v. Exxon Co.*, 543 F.2d 548 (5th Cir.1970), in support of his position. The Court sustains the trustee's contention and Harrah's is precluded from asserting the § 547(c)(4) argument.

Harrah's argues that the extension of credit resulting in the delivery of markers to debtor occurred in the ordinary course of business of the parties. The bankruptcy court found that "the issuance of Markers as a form of credit appears to be a standard in the industry, whether at the local or national level. To that extent, the debt was incurred in the ordinary course of the financial affairs of Harrah's." But as to debtor, the bankruptcy court found that the debt was not within the "ordinary course of business or financial affairs of the debtor" inasmuch as debtor was an attorney and not a professional gambler and simply gambled for recreation and, therefore, gambling by a nonprofessional does not qualify under the concept of ordinary business or financial affairs.[3] The Court is persuaded that there is evidence in the record to support the bankruptcy court's conclusion and, accordingly, finds that the bankruptcy court did not clearly err.

Relative to the factor that payment must be made in ordinary course of business of debtor and Harrah's, the bankruptcy court found that debtor's payment of the gambling debt was not within the debtor's ordinary financial affairs given the fact that debtor requested his bank to hold the markers and not pay them until debtor had time to obtain a loan to deposit funds in his account to cover the markers. Initially, Harrah's had agreed that it would hold the markers for fourteen days and a day later agreed to hold the markers for thirty days. As previously noted, debtor paid for the markers approximately thirty-two after the credit line was granted.

Regarding the element that the transfers must be made according to ordinary business terms, the bankruptcy court observed that "[s]ince, however, Harrah's cannot demonstrate the first two elements of the exception, the finding that Harrah's has failed to demonstrate that it's practice comports with ordinary business terms, is not necessary to the determination." However, the bankruptcy court did observe that: "To the extent there is evidence from which the Court can make any determination of any standard in the industry, local or otherwise, it appears that seven days is the norm, rather than fourteen or thirty days." Two witnesses called by Harrah's testified that there are no industry standard regarding the length of time a casino hold markers for payment and that two casinos in the Mississippi–Louisiana area hold markers for only seven days while Harrah's has policy of holding markers for fourteen to thirty days. Based on Harrah's witnesses' testimony, it is clear that each entity in the gambling industry in the Mississippi–Louisiana area has its on time frame for holding markers for payment. Harrah's, indeed, failed to prove that holding the markers for thirty days is the norm for the casino industry.

### C. Trustee's Cross–Appeal

The trustee also sought to avoid the transfers made by debtor to Harrah's pursuant to 11 U.S.C. § 548(a)(1), actual fraud, and Arkansas Code Annotated § 16–118–103, an Arkansas anti-gambling statute. The bankruptcy court stated that inasmuch as the bankruptcy court had found that the transfers were preferences under § 547(b) and the defenses under § 547(c) were unavailable to Harrah's, the bankruptcy court would not address the

---

**3.** The trustee argues that inasmuch as debtor's occupation is a small town lawyer, the debt had to be incurred in the ordinary business or financial affairs of a small town lawyer; and that small town lawyers are not in the business of borrowing from casinos and the bankruptcy court was correct in finding that the debt that debtor incurred at Harrah's was not in the ordinary course of debtor's business or financial affairs.

merits of § 548(a)(1) and the Arkansas Code. The bankruptcy court also denied the trustee's motion to reconsider.

■ The trustee readily concedes that the "decision by the bankruptcy court may be correct," but the trustee "filed his cross-appeal to protect the record and to make certain that he is not prejudiced by not having done so." Accordingly, the Court denies trustee's request that this action be remanded to the bankruptcy court with instruction to make findings of fact and conclusions of law relative to his § 548(a)(1) and Arkansas Code arguments. In essence, the bankruptcy court did not err in refusing to address these issues. See: *Fields Engineering & Equipment, Inc. v. Cargill, Inc.* 651 F.2d 589, 594 (8th Cir.1981) (stating that the trial court need not make findings on a particular issue if other issues are decisive of the case. Citing *Immigration and Naturalization Service v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190).

■ Finally, the trustee argues that the bankruptcy court abused its discretion in denying prejudgment interest. In denying the trustee's request for prejudgment interest, the bankruptcy court found that Harrah's was "not wholly lacking in a worthy or credible defense. Its arguments regarding the ordinary course of business exception were not wholly without merit" and a trial was essential in resolving the issues raised in Harrah's affirmative defense. See: *In re Bellanca Aircraft Corp.,* 850 F.2d 1275 (8th Cir.1988) (observing that there is no statutory authority for the proposition that the court must award the trustee prejudgment interest on preferential transfers and that its discretionary with the court). See also: 5 Collier ¶ 550.02[3][b] at 550–10. The Court finds no abuse of discretion in the bankruptcy court's decision.

CONCLUSION

For the reasons set forth above, the Court affirms the judgment of the bankruptcy court.