**Mark A. WARSCO, Trustee, et al., Plaintiffs,**

v.

**HOUSEHOLD BANK F.S.B., Defendant.**

**No. ADV 01–1085.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Jan. 15, 2002.

Charles H. Carpenter, Washington, DC, for defendant.

Rothberg, Logan & Warsco L.L.P., Fort Wayne, IN, for plaintiffs.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

One hundred six separate adversary proceedings[1] have been consolidated for the purpose of submitting them to the court for a decision. *See,* Fed.R.Civ.P. Rule 42(a); Fed. R. Bankr.P. Rule 7042. All of them present the question of whether the plaintiffs, who are the trustees of different chapter 7 bankruptcy estates, may recover payments made to the defendant, Household Bank. These payments were made either shortly before or soon after the date of the petition initiating each debtor's bankruptcy. Plaintiffs contend they constitute recoverable setoffs, *see,* 11 U.S.C. § 553(b), preferential transfers, *see,* 11 U.S.C. § 547(b), or impermissible post-

---

**1.** Adversary proceedings 01–1013 thru 01–1104, 01–6026 thru 01–6041, 01–6044 and 01–6045; of them, three (01–1072, 01–1079, and 01–1089) have been dismissed.

petition transfers of property of the estate, recoverable under 11 U.S.C. § 549(a). Those issues have been submitted to the court for a decision based upon the parties' stipulation of facts and the briefs of counsel.

## FACTS

Each of the transactions giving rise to Plaintiffs' claims proceeded in the following manner During the ninety days before filing bankruptcy, the debtor applied for a refund anticipation loan from Household by filling out a form entitled "Loan Application, Authorization and Certification for a Refund Anticipation Loan." When it submitted this application, the debtor also established a bank account at Household for the sole purpose of electronically receiving the debtor's federal income tax refund. The debtor also completed a Form 8453, consenting for the IRS to deposit its tax refund directly into the account with Household and, on lines 66(b) and 66(d) of its federal tax return (Form 1040), designated a routing number and bank account number corresponding to that account. At or about the same time, the debtor was provided with two additional documents: a disclosure document and a summary sheet.

Within a day or two after submitting its application, the debtor received a loan check from Household in the amount of the debtor's anticipated federal tax refund, less Household's fee for the loan. Sometime thereafter, the IRS deposited the debtor's tax refund into the account the debtor had established at Household. Household then immediately transferred the funds so deposited to itself.[2] It is this transfer, by which the defendant received payment of the amounts due it, that Plaintiffs seek to avoid.

The parties agree that, at all times, Household retained exclusive possession and complete control over the designated accounts. No funds other than the tax refund were ever deposited into those accounts and the debtors had no access to or ability to withdraw funds from them. The stipulated facts also provide the following information about each individual transaction: (1) the name and social security number of each debtor, (2) the loan application date, (3) the loan amount, (4) the date the loan check was issued, (5) the date the electronic fund transfer from the IRS was received in the debtor's account, (6) the date Household posted the refund, (7) the bankruptcy petition date, and, finally, (8) the prior years, if any, in which the respective debtor participated in Household's refund anticipation loan program. Lastly, the parties agree that all of the transfers were made in the ordinary course of Household's business or financial affairs and were made in accordance with the ordinary business terms of parties in the tax refund loan industry.

In response to the trustees' claims, Household contends that each debtor made an absolute assignment of its tax refund or, alternatively, that it held a perfected security interest in the refund or its proceeds. As an affirmative defense to the preference claims, it asserts that the payments it received are protected by the ordinary course of business defense of § 547(c)(2). It also characterizes each payment as recoupment, rather than a setoff, which would prevent the trustees from recovering anything under § 553(b) or § 549(a).

## DISCUSSION

The court finds two of Household's arguments persuasive. If the individual trans-

---

2. If the refund exceeded the amount due from the debtor, Household issued the debtor a check for the difference. If the refund was less than the amount due, the debtor owed the difference to Household.

fers are analyzed as preferences under § 547, they were made in the ordinary course of business. Furthermore, rather than constituting a preferential transfer or an impermissible setoff, the transfers in question are properly characterized as recoupment. Because of these conclusions, it is not necessary to consider the other issues raised by either party.

■ Section 547(b) of the Bankruptcy Code allows a trustee to avoid some payments to creditors made during the ninety days prior to bankruptcy. These payments are regarded as preferential because they allow the creditor to receive more than it otherwise would absent the transfer. The purpose of this section is two-fold. It is designed to promote equality of distribution among all creditors of the debtor, while, simultaneously, it deters creditors from "racing to the courthouse to dismember the debtor during [its] slide into bankruptcy," *Union Bank v. Wolas,* 502 U.S. 151, 161, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991), by eliminating the fruits of such a race. *In re Milwaukee Cheese Wisconsin, Inc.,* 112 F.3d 845, 847 (7th Cir.1997).

■ Not all payments made to creditors during the ninety days prior to bankruptcy are considered to have been preferential. In crafting § 547, Congress also created exceptions protecting some transfers from the trustee's reach. *See,* 11 U.S.C. § 547(c). Among them is the "ordinary course of business" exception. Where a transfer is (a) "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," (b) "made in the ordinary course of business or financial affairs of the debtor and the transferee," and (c) "made according to ordinary business terms," the transfer is insulated from avoidance. *See,* 11 U.S.C. § 547(c)(2)(A)-(C). This exception was de-

signed to "leave undisturbed normal commercial and financial relationships and to protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of both the debtor and the debtor's transferee." *See, In re Armstrong,* 231 B.R. 723, 729 (Bankr.E.D.Ark.1999), *aff'd,* 260 B.R. 454 (E.D.Ark.2001). Such transactions are not considered preferential, even though they would otherwise fall within the statutory definition. The creditor has the burden of proving that the debtor's payment to it qualifies for this protection. *See,* 11 U.S.C. § 547(g).

■ The Seventh Circuit has examined the ordinary course of business defense on several occasions. *See, e.g., Barber v. Golden Seed Co., Inc.,* 129 F.3d 382 (7th Cir.1997); *In re Milwaukee Cheese Wisconsin, Inc.,* 112 F.3d 845 (7th Cir.1997); *In re Midway Airlines, Inc.,* 69 F.3d 792 (7th Cir.1995); *In re Tolona Pizza Prod., Corp.,* 3 F.3d 1029 (7th Cir.1993). These decisions provide a clear path for this court to follow. The court must determine whether the transaction was ordinary not only as between the parties but also in the industry examined as a whole. *See, Midway Airlines,* 69 F.3d at 797. In this case, however, the parties have stipulated that the transactions were ordinary within the tax refund loan industry. Consequently, if they were also ordinary as between Household and the individual debtors, they are not avoidable preferences.

■ To determine whether transfers were ordinary as between a debtor and a preference defendant courts have traditionally examined a variety of factors including:

(1) the length of time the parties were engaged in the transaction at issue;

(2) whether the amount or form of tender differed from past practices;

(3) whether the debtor or creditor engaged in any unusual collection or payment activity; and,

(4) whether the creditor took advantage of the debtor's deteriorating financial condition. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 390 (7th Cir.1997) (citations omitted).

This list is not necessarily exhaustive but merely illustrative of appropriate considerations.

In this case, where the debtor was a prior customer of the defendant, with a history of applying for, receiving, and repaying refund anticipation loans, that history persuades the court that the transactions challenged here were ordinary as between Household and the debtor because those transactions occurred in the same manner and under the same circumstances as in prior years. Where, however, the challenged transaction was the first refund anticipation loan between the parties, the question requires a somewhat different analysis, confronting the issue of whether a single isolated transaction can qualify for the ordinary course of business defense of § 547(c)(2).

██ The court is not aware of any Seventh Circuit decisions which directly address this issue and the cases from other jurisdictions are divided. *Compare In re Finn*, 909 F.2d 903 (6th Cir.1990); *In re Russell Cave Co., Inc.*, 259 B.R. 879 (Bankr.E.D.Ky.2001); *In re Air South Airlines*, 247 B.R. 165 (Bankr.D.S.C.2000); *In re Armstrong*, 231 B.R. 723 (Bankr. E.D.Ark.1999), *aff'd*, 260 B.R. 454 (E.D.Ark.2001); *In re Morren Meat & Poultry Co., Inc.*, 92 B.R. 737 (W.D.Mich. 1988)(a first time transaction can qualify as a payment in the ordinary course of business) *with, In re Brown Transport Truckload, Inc.*, 152 B.R. 690 (Bankr. N.D.Ga.1992)(a first time transaction is categorically ineligible for protection as payment in the ordinary course of business). As this list suggests, it appears that the majority of courts considering the question have concluded that an isolated or first time transaction is not per se ineligible for protection from avoidance under section 547(c)(2). *See also, In re Midway Airlines, Inc.*, 180 B.R. 1009, 1015 (Bankr. N.D.Ill.1995). After carefully reviewing these decisions, the court agrees with this approach and with the conclusion that an isolated or first time transaction *may* be in the ordinary course of business or financial affairs of the debtor and the transferee.

██ Although a prior course of dealing between the parties would aid the court's determination concerning the ordinary course of business between a debtor and a preference defendant, and where available it is appropriately considered, it should not be an absolute necessity to the defense. *Morren Meat*, 92 B.R. at 740. Rather, the ordinary course of business may also be established by the terms of the parties' agreement. The parties have the opportunity to define the terms of their world, and, at least initially, they do so via their agreement. Over time, however, their actual performance of those contractual commitments may differ from what was originally agreed upon and, if it does, the course of conduct demonstrated by that historical performance will supercede the terms of their agreement. *Cf.,* I.C. 26–1–2–202(a); I.C. 26–1–2–208(1)(a course of conduct may explain or supplement the terms of an agreement). Then—apparently based upon the proposition that actions speak louder than words—history rather than the terms of the parties' agreement, will determine the ordinary course of business between them. Nonetheless, in the absence of such a history, there seems to be no good reason not to look to the terms of the parties' agreement in order to determine their ordinary

course of business.[3] *See, In re Russell Cave Co., Inc.,* 259 B.R. 879, 883–84 (Bankr.E.D.Ky.2001)(where parties' history begins with the transaction sought to be avoided, the court should give sufficient weight to the terms of the parties agreement). *See also, Air South Airlines,* 247 B.R. at 172 (citing *Payne v. Clarendon Nat'l Ins. Co (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1021 (10th Cir. BAP 1998)). To the extent that part of the rationale behind § 547(c)(2) is to encourage creditors to continue to do business with a potential debtor, *see, In re Classic Drywall, Inc.,* 121 B.R. 69, 75 (D.Kan.1990); *In re Morren Meat & Poultry Co., Inc.,* 92 B.R. 737, 740 (W.D.Mich.1988); *In re Ladera Heights Comm. Hospital, Inc.* 152 B.R. 964, 968 (Bankr.C.D.Cal.1993); *In re Decor Noel Corp.,* 134 B.R. 868, 875 (W.D.Tenn.1991), doing so is entirely consistent with that policy. Indeed, the court can imagine little (short of the certain knowledge that its debt will not be paid) that would discourage a potential creditor from extending credit to a new customer in questionable financial circumstances more than the knowledge that it would not even be able to raise the ordinary course of business defense, if it is subsequently sued to recover an alleged preference.

■ Each transaction at issue, including the first-time transactions between Household and a particular debtor, was conducted strictly in accordance with the terms of the parties' written agreement. This included the timing and the manner in which Household applied the funds from each debtors' account to the loan balance. Consequently, the court concludes that even the first-time transactions were ordinary as between the parties. Because each transaction was ordinary as between the parties and, when measured against the tax refund loan industry as a whole, according to ordinary business terms, they are insulated from avoidance by § 547(c)(2).

■ When the transactions between the debtors and the defendant are analyzed, not as preferential transfers under § 547, but as setoffs under § 553(b),[4] the court concludes that they constitute unavoidable recoupments. Section 553 generally preserves the common law right of setoff after bankruptcy, *see,* 11 U.S.C. § 553(a), although the creditor's ability to do so is subject to the automatic stay. 11 U.S.C. § 362(a)(7). Prepetition setoffs, which occur during the 90 days prior to bankruptcy and allow a creditor to improve its position, may, however, be avoided, *see,* 11 U.S.C. § 553(b), in much the same way that § 547 allows the avoidance of payments made to creditors during that same period of time. Although § 553(b) condemns pre-petition setoffs which allow a creditor to improve its position, its provisions do not apply to recoupments. *See, In re Malinowski,* 156 F.3d 131, 133 (2d Cir.1998); *In re University Medical Center,* 973 F.2d 1065, 1080 (3rd Cir.1992). This is true even though the recoupment permits the creditor to obtain otherwise

---

**3.** The requirement of § 547(c)(2)(C) that the transfer be "made according to ordinary business terms" and, thus, must fall within the range of practices acceptable to the particular industry, *see, Tolona Pizza,* 3 F.3d at 1032–33, places a limit on what the parties may agree to. It will prevent them from agreeing that "anything goes" and, by doing so, attempting to insulate all transfers to the creditor from avoidance.

**4.** By definition, a transfer does not include a setoff, 11 U.S.C § 101(54), and the legislative history indicates that the exclusion was intentional. *See,* 124 Cong. Rec. H11090 (daily ed. Sept. 28, 1978); S17407 (daily ed. Oct. 6, 1978)(remarks of Rep. Edwards and Sen. DeConcini)

preferential treatment. *See, In re Kosadnar,* 157 F.3d 1011, 1014 (5th Cir.1998).

■ It is often difficult to distinguish between a permissible recoupment and an impermissible setoff. Their fundamental distinction turns upon whether the mutual debts arose out of the same or separate transactions. *See, In re TLC Hospitals, Inc.,* 224 F.3d 1008, 1011 (9th Cir.2000). Where mutual debts "arise out of a *single integrated transaction* so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations," the creditor's apparent offset is really recoupment. *Malinowski,* 156 F.3d at 133 (emphasis added) (citations omitted).

■ The transfer of the proceeds from each debtor's individual deposit account to Household was part and parcel of a single integrated transaction—the loan to the debtor, along with the establishment of a deposit account which would receive the debtor's income tax refunds, and the subsequent creation of a corresponding debt when the refund was deposited into that account, which was then used to satisfy the debtor's obligation. Therefore, Households' actions constituted recoupment and not a setoff which can be recovered by the Plaintiffs through § 553(b). Furthermore, unlike setoff, recoupment is not subject to the automatic stay of § 362. *Kosadnar,* 157 F.3d at 1015; *Malinowski,* 156 F.3d at 133. Consequently, Defendants' actions do not constitute an unauthorized post-petition transfer that Plaintiffs can recover through § 549.

### CONCLUSION

If the transfer of the proceeds from each debtors' deposit account to Household is viewed as a preference, Household has demonstrated that these transfers are protected by the ordinary course of business defense of 11 U.S.C. § 547(c)(2). When analyzed under § 553, Household's application of the funds in each debtors' account was a recoupment and not a setoff or an otherwise unauthorized post-petition transfer. As a result, none of the transfers can be recovered by the Plaintiffs. A judgment of dismissal will be entered.