YORK LININGS INTERNATIONAL, INC., d/b/a YLI Inc. Refractory Engineers, Appellant–Defendant,

v.

HARBISON–WALKER REFRACTORIES COMPANY, Appellee–Plaintiff.

No. 49A02–0501–CV–3.

Court of Appeals of Indiana.

Dec. 28, 2005.

Andrew C. Charnstrom, Maureen E. Ward, Wooden & McLaughlin LLP, Indianapolis, Scott M. Tyler, Pro Hac Vice, Moore & Van Allen, PLLC, Charlotte, NC, for Appellant.

R. Brock Jordan, Jennifer Riley, Rubin & Levin, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

York Linings International, Inc. ("YLI") brings this interlocutory appeal of the trial court's order that granted the motion by Harbison–Walker Refractories Company ("H–W") to dismiss YLI's counterclaim in recoupment.[1]

We affirm.

### ISSUE

Whether the trial court order erred in dismissing YLI's "counterclaim in recoupment" and holding that YLI could neither "seek affirmative relief" from H–W by way of a counterclaim nor "set off any consequential damages it suffered from the failure of [H–W] to fulfill its contract with [YLI]." (App.1).

### FACTS

In 1999, TIC–The Industrial Company contracted to perform construction work to upgrade a cement plant in Greencastle. YLI was engaged as a subcontractor to remove and install refractory linings on the project. YLI then retained H–W as a sub-subcontractor to design the refractory installation and to supply and deliver refractory materials.

YLI made various payments to H–W as the project proceeded. On May 22, 2000, YLI made a payment to H–W in the amount of $236,984.99, and in receipt of this payment, H–W executed an unconditional waiver and release effective June 9, 2000 ("the release").[2] The release stated that it was granted in consideration of the payment by YLI; that H–W certified it had been paid in full for all labor and materials delivered on or Before June 9, 2000; that H–W waived any request or right to additional compensation from YLI for work on the project; and that H–W would defend and indemnify YLI "for any cost, liability or expense, including without

---

1. On December 5, 2005, we heard oral argument on this matter. We commend the parties for their able, and helpful, presentations.

2. In response to our inquiry at the oral argument, YLI stated that there had been no work performed by H–W on this project after June 9, 2000.

limitation attorney's fees," in connection with its performance of its contract with YLI. (App.24).

On February 14, 2002, H–W filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Pennsylvania.[3] On February 27, 2004, H–W filed a complaint in the Marion County Superior Court in which it alleged that YLI owed H–W $421,638.30 (plus interest and costs) for its labor and materials on the project. The complaint contained no reference to H–W's bankruptcy action.

On March 22, 2004, YLI filed an answer and counterclaim. YLI's answer denied H–W's allegations and asserted nine affirmative defenses, including the release dated June 9, 2000. YLI's counterclaim alleged that H–W had failed to properly perform its obligations under the contract between the parties. Specifically, the counterclaim asserted two claims for affirmative relief: one based on "breach of contract/breach of warranty," and another based on "negligent representation." (App.12, 13).

On April 29, 2004, YLI filed an amended answer and "counterclaim in recoupment." (App.17). Therein, YLI added a "tenth affirmative defense/counterclaim in recoupment," which sought "recoupment against H–W in an amount equal to the damages sought by H–W" for its claim of "recoupment based on breach of contract/breach of warranty/negligent representation." (App.19, 21). In its amended pleading, YLI asked that either H–W's complaint "be dismissed" and H–W "recover nothing of YLI," or that "the Court reduce any judgment in favor of H–W by the amounts to which YLI is entitled in recoupment." (App.22). YLI further

sought "the costs of this action and reasonable attorneys' fees pursuant to" the release. *Id.*

H–W filed a motion to dismiss YLI's amended counterclaim in recoupment. H–W asserted that it was operating under a stay pursuant to 11 U.S.C. § 362(a), which stay prohibited any counterclaim by YLI seeking affirmative relief as to a transaction that had occurred before the bankruptcy petition. H–W further asserted that YLI had "not filed a claim in the bankruptcy court" and had "neither sought nor obtained relief from the automatic stay from the bankruptcy court to bring a counterclaim." (App.26). Therefore, H–W's motion argued, YLI's counterclaim for recoupment seeking affirmative relief should be dismissed for failure to state a claim. H–W's motion acknowledged that the automatic stay did not prevent YLI from defending itself in H–W's action by means of various affirmative defenses.

On October 19, 2004, the trial court heard argument on H–W's motion to dismiss YLI's counterclaim in recoupment. On November 15, 2004, the trial court dismissed YLI's counterclaim in recoupment, holding as follows:

> The parties agree that due to [H–W]'s bankruptcy, [YLI] cannot seek affirmative relief against [H–W] by way of a counterclaim. [YLI] also may not set off any consequential damages it suffered from the failure of [H–W] to fulfill its contract with [YLI]. [YLI] has set forth [H–W]'s alleged failure to perform under the contract as defenses to [H–W]'s claim in its [nine] affirmative defenses.

(App.1). YLI brings this interlocutory appeal of the above order.

---

**3.** According to YLI's answer and counterclaim, H–W is a Delaware corporation with its principal place of business in Pennsylvania. The pleading further indicates that YLI is a Delaware corporation with its principal place of business in North Carolina.

## DECISION

H–W's motion to dismiss alleged that YLI's counterclaim in recoupment failed to state a claim, *i.e.*, it asserted a failure under Indiana Trial Rule 12(B)(6) to state a "claim upon which relief can be granted." Accordingly, our standard of review for the trial court's order thereon is as follows:

A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. Therefore, we view the complaint in the light most favorable to the nonmoving party, drawing every reasonable inference in favor of this party. In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under the set of circumstances. Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record.

*Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 710 (Ind.Ct.App.2001) (citations omitted), *trans. denied.*

At the outset, we note the provision of the U.S. Bankruptcy Code that creates an automatic stay. Pursuant to 11 U.S.C. § 362(a)(6), the filing of a bankruptcy petition stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." *See also Hammes v. Brumley*, 659 N.E.2d 1021, 1025 n. 1 (filing of petition automatically stays judicial action against the debtor in bankruptcy). "Therefore, unless a creditor falls into an explicitly enumerated exception to the automatic stay as listed in the Bankruptcy Code, a creditor is prohibited from proceeding with a lawsuit against a debtor in bankruptcy." *Id.* (citation omitted). Thus, when H–W filed its bankruptcy petition, there came into existence an automatic stay against any act by YLI to pursue a claim against H–W that arose before that debt. Although the bankruptcy court may grant relief from the automatic stay, *see id.* at 1027, YLI has not asked it to do so in this case.

We now turn to the concept of "recoupment." YLI directs us to the following definition of recoupment: "[t]he right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to [the] plaintiff's claim," citing BLACK'S LAW DICTIONARY 1275 (6th ed.1991). The more recent BLACK'S provides the following more complete definition:

1. The recovery or regaining of something, esp. expenses. 2. The withholding, for equitable reasons, of all or part of something that is due. 3. Reduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction. 4. The right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction. 5. An affirmative defense alleging such a breach.

BLACK'S LAW DICTIONARY 1302 (8th ed.2004) (internal citations omitted).

YLI asserts that its recoupment counterclaim is "based on theories of breach of contract, breach of warranty, and negligent representation" which "arise out of the same transaction that is the subject matter of H–W's claims." YLI's Br. at 6. YLI then cites authority for what it characterizes as "black-letter law" holding that recoupment claims against bankruptcy

debtors are "not barred" by the automatic stay created by the bankruptcy filing, and that "its Counterclaim falls within an exception" to the principle that a party who pursues a claim against a bankruptcy debtor is in violation of the automatic stay. YLI's Br. at 6, 8.

In *In re TLC Hospitals, Inc.*, 224 F.3d 1008, 1011 (9th Cir.2000), the court observed that "applied in bankruptcy, recoupment ... exempts a debt from the automatic stay when the debt is inextricably tied up in the post-petition claim." HHS was seeking to "recoup" its pre-petition overpayments to the nursing facility TLC "by applying them against its post-petition underpayment liabilities." *Id.* at 1014. Similarly, in *In re University Medical Center*, 973 F.2d 1065, 1079 (3rd Cir.1992), the issue was whether HHS, "without violating the automatic stay" of bankruptcy, could "recover pre-petition overpayments by withholding UMC's postpetition overpayments." We do not find the facts in these cases apposite in that there is no claim by YLI that it made an overpayment of any kind to H–W.[4]

YLI also cites *Warsco v. Household Bank*, 272 B.R. 246 (Bankr.N.D.Ind.2002), *aff'd* 334 F.3d 638 (7th Cir.2003), *cert. denied*, and its statement as follows:

> Where mutual debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations, the creditor's apparent offset is really recoupment.

In *Warsco*, individuals had applied for tax refund anticipation loans from Household Bank and received loans checks. Thereafter, the individuals filed bankruptcy petitions, and bankruptcy estates for these individuals sought to recover the IRS tax refund payments made to Household Bank "either shortly before or soon after the date" of their bankruptcy filings. *Id.* at 248. The court held that Household's application of the funds in each debtor's account "was a recoupment" because it "was part and parcel of the same transaction," the tax refund anticipation loan transaction. *Id.* at 253. Again, the facts of this case are inapposite to those here.

We acknowledge the fact that, as established by the above cases, it is possible to pursue a recoupment claim without violating the bankruptcy stay. However, we do not find these cases to establish that the trial court erred in dismissing YLI's claim for affirmative relief.

YLI also cites the provisions of Indiana Trial Rule 13 as to a counterclaim; and it reminds us that it sought no relief beyond that sought by H–W, that its counterclaim only asked that the trial court reduce any judgment in favor of H–W by the amounts to which YLI is entitled in recoupment. The substance of YLI's counterclaim, as noted by its brief, is "a claim against H–W based on theories of breach of contract, breach of warranty, and negligent representation." YLI's Br. at 6. H–W asserts that "[b]y its nature, a counterclaim has a viability independent of the complaint; an affirmative defense does not." H–W's Br. at 13.

H–W cites no authority for this proposition, and we have found no Indiana case expressly stating this. Arguably, the proposition may be inferred from the following two opinions. In *Braden v. Bra-*

---

4. In *In re CDM Management Servs., Inc.*, 226 B.R. 195, 197 (Bankr.S.D.Ind.1997), the bankruptcy court noted that for "application" of "the doctrine of recoupment" in bankruptcy, not only must the defendant's and plaintiff's claims "arise from a single claim or transaction," but also "there must be some type of 'overpayment'"

*den*, 575 N.E.2d 293, 295 (Ind.Ct.App. 1991), *trans. denied*, we held that a counterclaim "must state facts sufficient to constitute a cause of action in favor of the defendant"; and in *GKC Indiana Theatres v. Elk Retail Invest.*, 764 N.E.2d 647, 653 (Ind.Ct.App.2002), we held that an affirmative defense was "a defense upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint, but asserts additional matter barring relief." Combining these concepts, the proposition asserted by H–W appears in an opinion by the Appellate Court of Illinois as follows:

> A counterclaim differs from an answer or affirmative defense; the former is a cause of action which seeks affirmative relief, whereas an answer or affirmative defense merely attempts to defeat a plaintiff's cause of action.

*Marion Metal & Roofing Co., Inc. v. Wood*, 243 Ill.App.3d 890, 184 Ill.Dec. 173, 612 N.E.2d 1049, 1052 (1993). Further supporting this general proposition is the definition of "affirmative relief" found in BLACK'S: "The relief sought by a defendant by raising a counterclaim or crossclaim that could have been maintained independently of the plaintiff's action." BLACK'S at 1317.

YLI's "counterclaim in recoupment," on its face, seeks affirmative relief on a number of bases. That its subsequent prayer for relief qualifies the *amount* of relief sought does not change the nature of the claim made. Further, according to the prayer for relief, YLI's recoupment claim seeks to "bar[ ] relief" by H–W, *i.e.*, it is an affirmative defense. *GKC*, 764 N.E.2d at 653. Consistent with the trial court's order, YLI's affirmative defenses remain.

YLI's overarching argument is that the dismissal "elevates form over substance." YLI's Br. at 4. As reasoned above, we find YLI's argument to do exactly this. H–W

correctly observes that the trial court's order allows YLI to pursue its allegations of breach of contract, breach of warranty and negligent misrepresentation as affirmative defenses, and that these allegations "would be disposed of by the resolution of [H–W]'s complaint." H–W's Br. at 13. Therefore, we find unpersuasive YLI's initial argument that the automatic stay is not dispositive here because YLI seeks no relief "beyond the relief sought by" H–W. YLI's Br. at 4, 8.

YLI's appellate brief also argues that its claim for attorney's fees does not violate the automatic stay "because the claim arose after the bankruptcy petition date, when [H–W] filed its lawsuit against YLI in breach of the [r]elease." *Id.* at 9. However, H–W cites authority holding that a claim for payment of attorney's fees pursuant to a pre-bankruptcy petition indemnification contract is a claim that came into being at the time the contract was executed. *See e.g. In re Manville Forest Products Corp.*, 209 F.3d 125, 129 (2nd Cir. 2000). In reply, YLI concedes that such authority indicates its claim for attorney's fees "likely is a pre-petition claim." Reply at 4. However, YLI maintains that it "still is entitled to retain that claim as part of its Counterclaim in Recoupment," as its claim for attorney's fees pursuant to the release "arose from the same transaction," and it has not asked for such fees "in an amount greater than the amount H–W claimed." Reply at 4.

As discussed above, we do not find that YLI may pursue a counterclaim for recoupment that seeks affirmative relief. The trial court's order held that it could not "set off any consequential damages it suffered from the failure of [H–W] to fulfill its contract with [YLI]." (App.1). YLI's pursuit of attorney fees pursuant to the release would be a claim for consequential damages. Because YLI did not seek relief

from the automatic stay to pursue such affirmative relief, the trial court's order is not erroneous in this regard.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.